UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward J. GURNEY et al., Defendants,

Miami Herald Publishing Company et al.,
Movant-Appellants.

No. 75–3338.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1977.

Rehearing and Rehearing En Banc
Denied Oct. 18, 1977.

Parker D. Thomson, Sanford L. Bohrer, Susan W. Diner, Miami, Fla., for Miami Herald.

William C. Ballard, St. Petersburg, Fla., for Times Publishing Co.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Appellants, The Miami Herald Publishing Company (publisher of *The Miami Herald*), The Times Publishing Company (publisher of *The St. Petersburg Times*), Gene Miller, a reporter for *The Miami Herald*, and Angel Castillo, a reporter for *The St. Petersburg Times*, seek review of district court rulings

denying their requests to examine certain trial documents in a criminal proceeding.[1]

## I. BACKGROUND

The trial in the case of *United States v. Edward J. Gurney, et al.*, began on February 25, 1975. The case involved an incumbent United States senator at the time of indictment and generated considerable public interest. The proceedings were the subject of extensive news coverage. Several accommodations were made by the trial judge for representatives of the news media. Provisions were made for a telephone room for wire service representatives, reserved seating was secured for the press, and convenient but inconspicuous seating was furnished to a newspaper sketch artist.

The district judge discussed jury management questions with counsel before the trial began. Sequestration was considered, but defense counsel chose not to request such action in view of other measures adopted to insulate the jury. The judge admonished the jurors daily not to discuss the case, not to read any newspapers other than those cleared by counsel and given to the jurors by the Clerk, and not to listen to or view broadcasts concerning the trial. The attorneys were informed that the district judge expected to grant appropriate requests to conduct some of the proceedings ancillary and preliminary to the reception of evidence out of the hearing of the public.

After the trial got under way and the government began putting on its case in chief, consisting in large part of documentary proof, the appellant newsmen sought to inspect various documents and exhibits, some of which were in evidence and some of which were only identified. The Clerk refused access to many of these items pursuant to oral directions of the district judge. Appellants then filed their "Petition for Hearing and for Vacation of Restrictions on Press and Other News Media" directed to the district court's denial of access. In this petition, the newspapers and reporters asked the trial court to remove the restrictions on their access to: (1) exhibits offered at trial for identification but not yet admitted; (2) exhibits admitted but not yet read to the jury; (3) exhibits offered but rejected; (4) the transcript of the grand jury testimony of Senator Gurney; (5) the witness list; (6) names and addresses of the jurors; and (7) defense exhibit # 79, a copy of a purported statement of a witness, Larry Williams, to the F.B.I., which had been received in evidence. The petitioners asked further that the judge vacate any prior rulings entered during the trial as to such matters and that he reduce to writing those rulings not vacated.

On July 1, 1975, after conducting a hearing, the district judge entered a written order permitting: (1) inspection of exhibit # 79; (2) inspection of a list of witnesses; and (3) examination by petitioners of exhibits received in evidence, subject to the availability of the Court's trial clerk. He denied: (1) unlimited disclosure of Senator Gurney's grand jury testimony;[2] (2) disclosure of the names and addresses of the jurors; (3) access to the bench conferences with counsel;[3] and (4) access to exhibits identified but not received into evidence.

On July 16, 1975, the district judge orally denied appellants' further request for access to the transcript of a proffer of testimony received by the judge *in camera* at a bench conference. On July 30, 1975, after the jury was sequestered during its deliberations, appellants asked for leave to inspect a written communication to the judge from

---

1. The trial in question was the criminal trial of former Senator Edward J. Gurney and others. (*United States v. Gurney, et al.*, Case No. 74–122–CR–J, in the United States District Court for the Middle District of Florida.)

2. At the hearing, the judge stated that appellants could obtain transcripts from the court reporter of those portions of the grand jury testimony that had been read to the jury.

3. In their petition, appellants did not seek direct access to bench conferences as such. This matter developed during the hearing, inasmuch as proffers of government exhibits, defense objections thereto, and rulings thereon occurred in the main during sidebar conferences between court and counsel.

the jury. A similar request was made on July 31, as to a communication from the trial judge to the jury. The district court orally denied both requests.[4] Appellants seek reversal of the district court's rulings.[5]

Appellants' primary claim is that the district judge violated their First Amendment rights when he denied the press access to various exhibits and transcripts, the jury list, and the written communications between the judge and the jury. Also at issue is whether the district judge violated the First and Fifth Amendments by failing to: (1) hold a hearing and (2) issue a "special order"[6] regarding each of the appellants' requests to view materials. After careful consideration of the issues presented, we find that the district court's actions did not violate appellants' First or Fifth Amendment rights. Thus, we affirm the district judge's rulings.

## II. JURISDICTION

 We must consider at the outset the jurisdictional questions of standing, finality, and mootness.

The appellee United States concedes that the reporters and their respective newspapers have standing to challenge the district court's decisions regarding appellants' claimed right of access to the various trial documents. The appellants were the direct targets of the district court's rulings. The two requirements for establishing standing have been met—i. e. (1) there is a claim of injury in fact; and (2) the interest sought to be protected is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Data Processing Service v. Camp*, 397 U.S. 150, 153–54, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Appellants have arguably suffered an injury with respect to newsgathering. Moreover, the district court's determinations arguably affected appellants' rights under the First Amendment. See *Columbia Broadcasting System, Inc. v. Young*, 522 F.2d 234, 237–38 (6th Cir. 1975). We conclude that appellants' standing is established.

 The government contends that, although the July 1, 1975, written order was final and appealable, the three subsequent

4. Appellants sought expedited review of the district court's actions by a Petition for Writs of Mandamus and Prohibition filed in this court. This Petition was denied by an order entered August 13, 1975.

5. In addition, appellants request that the trial judge be directed:

"1. Not to issue any orders or establish any unwritten rules restricting the flow of information to or access of Appellant reporters or other members of the press to the Court record and proceedings in a criminal trial without first giving the press notice and a reasonable opportunity to be heard and reducing such order to writing and causing it to be docketed with the Clerk.

2. Not to hold 'bench conferences' with the jury excused to deny Appellant reporters or other members of the press and the public access to information as to the conduct of a public trial or to employ any other devices to the same purpose or effect.

3. To permit Appellant reporters and other members of the press to inspect and view transcripts of all testimony and proffered testimony or, if no transcript is available, afford them the opportunity to have a transcript prepared at the expense of the party requesting it.

4. To permit Appellant reporters and other members of the press to inspect and view all written communications between the Judge and the jury.

5. To permit Appellant reporters and other members of the press to inspect and view all exhibits that have been identified and placed in the custody of the Clerk as part of the record of the Court."
Appellants' Brief at 28–29.

6. Rule 16(C) of the General Rules of the Middle District of Florida deals with the use of special orders in widely publicized cases:

C. Special Orders in Widely Publicized and Sensational Cases.

In a widely publicized or sensational case, the Court on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order.

oral rulings (July 16, 30, and 31) were not final orders, but merely incidental, non-reviewable regulations of trial management.

Title 28, U.S.Code § 1291 provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts . . . ." The desire for judicial economy and the avoidance of unnecessary piecemeal appeals underlie the final judgment rule. See C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure: Jurisdiction, § 3911 (1976); 9 J. Moore, Federal Practice ¶ 110.07 (2d ed. 1975).

The "collateral order" doctrine established by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), provides an expansive interpretation of the finality requirement. A "collateral order" is one which finally determines a claim of right "separable from, and collateral to, rights asserted" in the main cause of action. *Cohen, supra*, 337 U.S. at 546–47, 69 S.Ct. at 1225–1226. Four basic requirements generally must be satisfied before a matter is reviewable under the collateral order doctrine. First, the matter must have been finally disposed of by the district court. But, if there is a "plain prospect that the trial court may itself alter the challenged ruling, there is little justification for immediate appellate intrusion. It is enough that no further consideration is contemplated". Wright, Miller and Cooper, *supra*, § 3911 at 470. Second, the matter reviewed must be "separable from, and collateral to, rights asserted in the action". *Cohen, supra*, 337 U.S. at 546–47, 69 S.Ct. at 1225–1226. Finally, if denial of review entails the risk of "irreparable injury", and the case involves "a serious and unsettled question", the appeal should be granted. See Wright, Miller and Cooper, *supra*, § 3911 at 470–71; Moore, *supra* ¶ 110.10 at 133.

In view of the underlying purpose of the final judgment rule and the particular facts in this case, we believe that the district judge's four rulings in question had sufficient finality to permit appeal. Although the three oral rulings may have lacked procedural formality, the appeal can be justified in light of: (1) the improbability of further consideration by the trial court; (2) the close similarity of issues disposed of by the written order and the oral rulings; and (3) the general importance of the rights involved. Moreover, the questions presented here could affect many other cases. See Wright, Miller and Cooper, *supra*.

█ Mootness presents the final procedural hurdle. Appellee concedes that the appeal here is not moot. We agree. Despite the conclusion of the *Gurney* trial, the specific issues presented by the appellants are of a continuing nature. A case such as this one presents a controversy "capable of repetition yet evading review", *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), because "the underlying criminal proceeding would almost always terminate before the appellate court hears the case". *United States v. Schiavo*, 504 F.2d 1, 5 (3rd Cir. 1974), cert. denied, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688. See also *Nebraska Press Assn. v. Stuart,*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

We proceed to the merits.

### III. FIRST AMENDMENT CLAIM

The critical issue in this case is whether the trial court's rulings violated appellants' First Amendment freedoms. The district judge denied appellants access to (1) exhibits not yet admitted into evidence; (2) transcripts of bench conferences held *in camera*; (3) written communications between the jury and the judge; (4) list of names and addresses of jurors; and (5) Mr. Gurney's grand jury testimony.

█ The question of media First Amendment newsgathering rights in the face of court or government restrictions has been the subject of much discussion but remains largely unsettled.[7] It is clearly established,

---

7. See e. g. Note, *The Rights of the Public and the Press to Gather Information*, 87 Harv.L. Rev. 1505 (1974); Comment, *Newsgathering: Second-Class Right Among First Amendment*

however, that "[a] trial is a public event". *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947). Members of the media are thus free to report whatever occurs in open court. *Estes v. Texas,* 381 U.S. 532, 541–42, 85 S.Ct. 1628, 1932, 14 L.Ed.2d 543 (1965); *United States v. Dickinson,* 465 F.2d 496, 509 (5th Cir. 1972).

The First Amendment guarantees "special protection against orders that prohibit the publication or broadcast of particular information or commentary—orders that impose a 'previous' or 'prior' restraint on speech". *Nebraska Press Assn. v. Stuart, supra,* 427 U.S. at 556, 96 S.Ct. at 2801, 49 L.Ed.2d 683. Generally, orders proscribing publication of matters transpiring in open court are constitutionally infirm, absent some compelling justification. *Id.; Columbia Broadcasting System, Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975); *United States v. Columbia Broadcasting System, Inc.,* 497 F.2d 102 (5th Cir. 1974). But the trial judge here did not resort to the use of prior restraints despite the case being much publicized. "A prior restraint . . . by definition, has an immediate and irreversible sanction". *Nebraska Press Assn., supra,* 427 U.S. at 559, 96 S.Ct. at 2803. No such restriction "freezing", *id.,* speech was imposed. The district judge merely refused to allow the appellants to inspect documents not a matter of public record. Appellants were free to obtain whatever information they desired from any source except from the district court and its supporting personnel.[8]

The Supreme Court has recognized that newsgathering warrants some degree of First Amendment protection. "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated". *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed2d 626 (1972). The extent of such protection has remained uncertain, but it is clear that it is not without bounds. "The right to speak and publish does not carry with it the unrestrained right to gather information". *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). The First Amendment right to gather news has been defined in terms of information available to the public generally.[9] See *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Branzburg, supra; Garrett v. Estelle,* 556 F.2d 1274 (5th Cir. 1977) [decided August 3, 1977].

The press cannot be denied access to any information already within the public domain. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). Yet,

> "[t]he Constitution does not . . . require government to accord the press special access to information not shared by members of the public generally. . . . It is one thing to say that a journalist is free to seek out sources of information not available to members of the general public, that he is entitled to some constitutional protection of the confidentiality of such sources . . . and that government cannot restrain the

*Freedoms,* 53 Texas L.Rev. 1440 (1975); Comment, *The Right of the Press to Gather Information After Branzburg and Pell,* 124 U.Pa.L. Rev. 166 (1975).

**8.** Alternative sources of information were available to appellants: the parties, the witnesses, the attorneys and members of the public generally. Appellants' attempt to analogize the instant case to *Columbia Broadcasting System, Inc. v. Young,* text, *supra,* fails. In *Young* CBS sought mandamus from the Sixth Circuit against the judge (District Judge Don J. Young) who was about to try a number of civil cases arising from the Kent State shootings on the campus of that University on May 4, 1970. There was widespread attendant publicity, and Judge Young had entered a "gag" order restraining everyone remotely concerned with the cases, including counsel, parties, court personnel, relatives, friends and associates, from discussing the cases with the media or members of the public. Of course no such sweeping order is involved here.

**9.** "When representatives of the communications media attend trials they have no greater rights than other members of the public". *Estes v. Texas,* 381 U.S. 532, 584, 85 S.Ct. 1628, 1654, 14 L.Ed.2d 543 (1965) (Warren, J., concurring).

publication of news emanating from such sources. . . . It is quite another thing to suggest that the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally. That proposition finds no support in the words of the Constitution or in any decision of this Court". (citations omitted).

Pell, *supra*, 417 U.S. at 834–35, 94 S.Ct. at 2810. In *Pell*, the Court found that the press was not denied access to sources of information available to the public, and therefore, no violation of First Amendment rights occurred.[10] *Id.* The Supreme Court has suggested that, if there are other important interests to be protected in judicial proceedings, such protection may be accomplished "by means which avoid public documentation . . . ." *Cox Broadcasting Corp., supra,* 420 U.S. at 496, 95 S.Ct. at 1047.

■■■ The documents sought by appellants were not part of the public record.[11] In keeping with present Supreme Court guidelines, we do not think that the press had any First Amendment right of access to those matters not available to the public. See *Garrett v. Estelle, supra.*

There are many areas to which the public, and accordingly the press, traditionally have had no right of access. Denials of access to such proceedings are generally based upon fundamental governmental interests and protections of other rights which override the concerns of the public. For example, the press and the public have historically been excluded from sensitive governmental activities such as grand jury proceedings, judicial conferences, see

*Branzburg, supra,* 408 U.S. at 684, 92 S.Ct. at 2658, and *in camera* inspections of evidence. See *United States v. Nixon,* 418 U.S. 683, 714, 94 S.Ct. 3090, 3110–3111, 41 L.Ed.2d 1039 (1974). Admittedly, such denials of access hamper newsgathering. Any burdens, however, are generally incidental in view of the strong governmental interests involved.

The right of access to criminal proceedings becomes a highly controversial issue when First Amendment questions must be analyzed in conjunction with competing Sixth Amendment considerations. "A heavy obligation rests on trial judges to effectuate the fair-trial guarantee of the Sixth Amendment". *United States v. Columbia Broadcasting System, Inc.,* 497 F.2d 102, 104 (5th Cir. 1974). "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell,* 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). In a widely publicized case, "the right of the accused to trial by an impartial jury can be seriously threatened by the conduct of the news media prior to and during trial". Report of the Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue, 45 F.R.D. 391, 394 (1968).

■■■ Thus, it is the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the accused receives a fair, orderly trial comporting with fundamental due process. The trial judge is therefore granted broad discretion in ordering the daily activities of his court.

**10.** It appears that the logical extension of the media's right of access analysis is to determine what right of access the public has. The public right of access, however, has yet to be defined by the Supreme Court. Such a broad determination is not required by the limited questions presented for review here.

It is interesting to note, however, that in recent years rights of public access to government information have been established through legislative action, on the federal level for instance by 5 U.S.C. § 552, The Freedom of

Information Act (as Amended 1974). This statute has served as the model for similar legislation by many of the states.

**11.** Appellants complain that their access to exhibits which were part of the public record was also unconstitutionally restricted. The trial judge permitted such access, but it was conditioned on his Court Clerk's availability. The reasonableness of this action is discussed *infra,* Note 13 and accompanying text.

*Id.* at 401. "[A] trial judge should have the authority to adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity". *Columbia Broadcasting System, Inc. v. Young, supra,* 522 F.2d at 241. See also, *United States v. Schiavo, supra,* 504 F.2d at 6; *United States v. Columbia Broadcasting System, Inc., supra,* 497 F.2d at 106–07. Within this discretion, therefore, the district judge can place restrictions on parties, jurors, lawyers, and others involved with the proceedings despite the fact that such restrictions might affect First Amendment considerations. Sixth Amendment rights of the accused must be protected always. *United States v. Columbia Broadcasting System, Inc., supra; United States v. Schiavo, supra.*

■ The trial judge in this case did not abuse his discretion in imposing the challenged restrictions on press access to documents. The refusal to direct that the names and addresses of the jurors be publicly released [12] was well within the bounds of such discretion. See "Free Press-Fair Trial", *supra,* 45 F.R.D. at 410. Similarly, the trial judge had the duty of determining which exhibits were entitled to come into evidence. The press has no right of access to exhibits produced under subpoena and not yet admitted into evidence, hence not yet in the public domain. When exhibits were received into evidence and the subject of scrutiny by press and public it was reasonable for the court to condition their examination by the press upon the Clerk's availability.[13]

12. During the jury selection process, the names of the persons selected and other jurors being examined were called in open court. The district court imposed no restriction on publication of the names called in open court. But the judge was following a well-established practice when he refused to publicly release the jury list, which included the names, addresses, and other personal information about the jurors. Such protection of the privacy of the jurors was clearly permissible, and certainly appropriate in a trial which attracted public attention as this one did.

13. In the hearing held on appellants' Petition, the district judge pointed to his trial Clerk's other taxing duties and the large number of exhibits involved as the basis for this restriction. There were several hundred exhibits in

■ Bench conferences between judge and counsel outside of public hearing are an established practice, "Free Press-Fair Trial", *supra,* 45 F.R.D. at 403, and protection of their privacy is generally within the court's discretion.[14] No abuse of discretion with respect to the conduct of the bench conferences is demonstrated by the appellants. Such conferences are an integral part of the internal management of a trial, and screening them from access by the press is well within a trial judge's broad discretion.

■ The district judge committed no error in denying access by appellants to Senator Gurney's grand jury testimony, and to the written communications between the judge and the jury. Gurney's grand jury testimony was not read to the jury in its entirety. The portion not published remained under the cloak of secrecy imposed by Rule 6(e), F.R.Crim.P. The judge permitted the appellant newsmen to obtain a transcript of that portion of the testimony read to the jury. It was proper to refuse to require the Clerk to blank out the unread portions of the grand jury testimony and deliver the transcript so excised to the news media.

■ The press clearly has no constitutional right of access to the written communications between judge and jury. Compelling governmental interest in the integrity of jury deliberation requires that the priva-

this case. The Clerk must account strictly for all exhibits in his safekeeping. Thus, it is of utmost importance for him to maintain them in systematic order, available when called for by court or counsel. These factors made it necessary to limit examination by the press to such times as the Clerk was available.

14. "It is elementary that *in camera* inspection of evidence is always a procedure calling for scrupulous protection against any release or publication of material not found by the court, at that stage, probably admissible in evidence and relevant to the issues of the trial for which it is sought." *United States v. Nixon, supra,* 418 U.S. at 714, 94 S.Ct. at 3110–3111.

cy of such deliberations and communications dealing with them be preserved. Confidentiality is a shield against external considerations entering into the deliberative process. Such a shield prevents undermining of the integrity of the jury system. Juries must be permitted to deliberate fully and freely, unhampered by the pressures and extraneous influences which could result from access by the press to the deliberative process.

█ The First Amendment does not protect against whatever incidental burdens on newsgathering occurred in this case. The trial judge employed reasonable "remedial measures", far short of prior restraints, to prevent possible prejudice and maintain an orderly trial. See *Sheppard, supra,* 384 U.S. at 362, 86 S.Ct. at 1522. The appellants were in no way prevented from investigating the other available sources to obtain the desired information. The district court's rulings denying press access implemented a legitimate governmental interest in securing for the accused the fair trial guaranteed them by the Sixth Amendment. The court's actions bore a reasonable relation to the achievement of that purpose.

█ Finally, we find no error in the district court's failure to hold hearings and issue special orders regarding the appellants' requests for information. The oral rulings of the district judge specifically stated what was being withheld from the appellants. At the June 20, 1975, hearing and in his written order, the trial judge sufficiently explained his reasons for denying appellants access to documents. The subsequent requests were substantively identical to the requests considered at the June 30, 1975 hearing, and disposed of in

the July 1 order. The terms of the orders and the reasons therefore were clearly stated.[15]

For the foregoing reasons, the district court's rulings appealed from are each

AFFIRMED.

---

15. Appellants rely on *United States v. Schiavo, supra,* to establish the requirement to hold hearings and issue special orders. In that case, however, the oral order: (1) gave no indication of the reasons for the order; and (2) failed to state specifically what conduct was being restrained. No such deficiencies are present here.

Moreover, it is unreasonable to require a district judge to hold hearings and to issue special orders with respect to every request he is presented with by the press during the course

of a long trial. The later requests here were oral and informal. The judge responded in kind. It is the trial court's responsibility to decide which documents will be placed in the public domain, and which are entitled to privacy and confidentiality. These decisions are discretionary, numerous, and form an integral part of trial management. The efficient administration of the trial courts would be significantly impaired should we require hearings and special orders for each such decision.