Richard ANGELICO,
Petitioner-Appellant,

v.

STATE OF LOUISIANA,
Respondent-Appellee.

No. 78–1070.

United States Court of Appeals,
Fifth Circuit.

April 12, 1979.

Murray, Murray, Ellis, Braden & Landry, Julian R. Murray, Jr., New Orleans, La., for petitioner-appellant.

Harry Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., New Orleans, La., William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, La., William F. Wessel, New Orleans, La., for respondent-appellee.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Richard Angelico, a New Orleans television news reporter,[1] was charged in a Rule to Show Cause with contempt of court for the alleged violation of court rules issued by the Orleans Parish Criminal District Court. The Judges of the Criminal District Court sitting en banc tried Angelico and found him guilty as charged. He was sentenced to pay a fine of $500.00 or serve

---

1. Angelico was employed at the time of the incident by television station WVUE, New Orleans, Louisiana.

30 days in jail. Appellant exhausted his state remedies without success. He then brought a habeas corpus action in federal district court. 28 U.S.C. § 2254. Appellant's petition was referred to a magistrate who, in his report, found no merit to the claim. The district court adopted the magistrate's findings and denied the writ.

On this appeal Angelico contends the rules under which he was convicted transgress permissible First and Fourteenth Amendment standards of vagueness and that the state offered no evidence to show he blocked a building exit in violation of the rules. After careful consideration of the record, briefs and oral arguments, we agree with appellant, and therefore vacate and remand with directions that the district court enter a judgment consistent with this opinion.

Angelico was alleged to have violated two Criminal District Court Rules, 3(b) and 4(b), which read as follows:

Rule 3(b) Unless specifically authorized by the Court En Banc, persons having any type of camera, recording equipment or other type of electrical or electronic device in his or her possession shall not be permitted to operate such device in the halls of the Criminal Courts Building, and no such person shall block any entrance or exit of the said building.

Rule 4(b) No person shall question, interview or interfere with, or attempt so to do, any person who may testify or who has testified before any court or in any Grand Jury proceeding within the courts or hallways of the Criminal Court Building. . . .

The asserted violations occurred on October 28, 1975 when Angelico, while acting in the course of his employment, interviewed Ms. Edna Halbedal in the basement driveway of the Orleans Parish Criminal District Court building. Ms. Halbedal, an alleged kidnap victim, had testified before a state grand jury on that day. During her testimony, Angelico and a camera and recording crew under his supervision placed cameras and electronic recording equipment in a narrow concrete driveway in the basement underneath the building. The location was near a set of double doors where he anticipated the witness would exit. Inside the doors is a small foyer leading to the building's only public elevators. On each side of the foyer is a jury pool or lounge. Jurors and employees frequently utilize the elevators.

The driveway where Angelico was positioned is commonly used by motorists and pedestrians to obtain access to the building. Approximately 10 feet in height, it runs the length of the building, opening at both ends into public streets. At one end the driveway widens into a large basement parking area for court personnel. At the opposite end are doors leading to the Coroner's office and a parking place for one vehicle. Alongside the driveway are numerous office entrances. No courtrooms, however, are located on the basement level.

After she completed her testimony, Ms. Halbedal, confined to a wheelchair because of her ill health and elderly age, was transported by elevator to the basement area where the driveway is located. A policeman, Officer Raymond, wheeled her to the double doors where her wheelchair became stuck upon a doorjamb. As he lifted the wheelchair over the doorjamb and into the basement driveway, Angelico approached Ms. Halbedal and began to question her. Officer Raymond was temporarily blinded by the lights from the television cameras, which had been activated. He wheeled the witness down the driveway and Angelico continued the interview until Ms. Halbedal reached a waiting automobile at the driveway's end.

During the course of Angelico's interview, Ms. Halbedal stated that she had not been kidnapped. At that moment her alleged kidnapper was being held in jail without bond.

After the incident, Officer Raymond asked Angelico whether there was a court order prohibiting interviews within the building. Angelico, according to Raymond's testimony, replied: "I think there is, but I don't think that's [the Order] included here", or words to that effect.

In our review of the contentions, we must initially address the evidentiary question of whether Angelico blocked an exit from or entrance to the Criminal Court Building. Rule 3(b) contains the specific proscription that ". . . no person shall block any entrance or exit of the said building," and if we conclude that the evidence established that conduct, we would have no occasion to reach the merits of the vagueness issue.

The State of Louisiana asserts in its brief that the Honorable Judge "obviously rested" the conviction, in part, on a factual determination that Angelico blocked the double doors. Appellee's Brief at 19. In addition, the appellee State contended on oral argument that the district court made the same factual finding in appellant's federal habeas proceeding, and thereby, this court is limited to "clear error" review. The Rule to Show Cause, however, did not contain an averment that Angelico blocked the door.[2] In the course of the trial, neither the prosecution nor the judges mentioned an alleged blocking of the door or offered evidence for the express purpose of showing that conduct. At the conclusion of the proceeding, the court stated no grounds for the conviction. Moreover, there is no factual finding of a blocking in either the federal magistrate's habeas report and recommendation or in the district court's Order adopting the recommendation. (R. 36–45). Thus, despite the State's assertions to the contrary, it is evident that Angelico's alleged obstruction was not placed in issue at his trial and was first raised on this appeal.

■ Our own independent review of the record fails to reveal any evidence that Angelico blocked the entrance to the doorway. The State cites as prime proof of an obstruction, Officer Raymond's testimony at pages 94–95 of the record. At most the testimony shows that the officer was temporarily blinded by the camera lights as he walked through the doorway.[3] It does not

---

**2.** The Rule to Show Cause quoted Rule 3(b) and 4(b) and then alleged the following violation:

And on further considering that Richard Angelico, defendant herein, on October 28th, 1975, brought into the Criminal Courts Building electronic recording devices and cameras without authorization and further interfered with and attempted to interview an individual who had appeared before the Special Orleans Parish Grand Jury as a witness. R. 52–53.

**3.** Direct examination by the State

\* \* \* \* \* \*

Q. Okay. And what route did you take?
A. We exited the Grand Jury Room and walked to our left to the elevators located in the center of the building. Mrs. Halbedal was brought to the basement floor. We exited into the hallway or drive in the basement and turned to the right.

\* \* \* \* \* \*

Q. Okay. And what happened as you went out into the passageway.
A. As we walked through the doorway, lights, camera lights, came on and momentarily blinded myself and Mrs. Halbedal. R. 94.

\* \* \* \* \* \*

Q. Just tell what you saw happened. That's all.
A. Mrs. Halbedal raised her eyes—raised her hands in front of her eyes and was saying "No. No." At first I wasn't certain what was going on and then I observed Mr. Angelico moving towards us from what seemed to be the left side of the door, my left, the left side of the doorway. He had a microphone in his hand and he placed this microphone in front of Mrs. Halbedal and began asking her questions.

Q. Okay. How long did that persist?
A. We were in the process of getting the wheelchair over a ledge right there, a doorjam or whatever you want to call it, I guess until we finally got the chair into the hallway or the driveway and started to move. R. 95.

\* \* \* \* \* \*

Q. Once you got into the passageway, how far did you walk?
A. I would say its half the length of the hallway.

\* \* \* \* \* \*

Q. And you were in the basement throughout?
A. Yes, correct.
Q. Was Mr. Angelico with you throughout?
A. Yes sir. R. 96–97.

\* \* \* \* \* \*

Q. All right. Now when you came out of the lobby or foyer area to the elevators, Mr. Angelico was on the outside of the door, is that correct?
A. He was on the outside of the door.
Q. Were both doors open or was one closed or were both closed or what?
A. To the best of my recollection, the door on the left was closed because we had a little trouble getting the chair through the door or over that doorjam.

establish that Angelico physically impeded the officer's progress in lifting Ms. Halbedal over the doorjamb and wheeling her through the passageway. Neither does it show that appellant hindered other persons' use of the doorway. Rather, Raymond's declarations indicate his movement of the witness through the doors and down the driveway was continuous and unaffected by Angelico's approach and efforts to interview her. As the State has failed to show an obstruction, the contempt conviction may not be sustained on this basis.

Appellant's vagueness claim is directed at the language of 3(b) and 4(b) which forbids interviews with trial and grand jury witnesses and the unauthorized operation of electronic devices in the "halls" and "hallways" of the Criminal Court building. He argues he was not accorded fair warning that interviews in the driveway were illegal because reasonable persons would not comprehend that "halls" and "hallways" of the Criminal Court building encompass a driveway located underneath the courthouse building. In essence his argument is one of practical understanding; that "halls and hallways" in their ordinary usage connote an interior corridor within a building, not a basement passageway used by motor vehicles and pedestrians which opened into public streets at both ends. Thus, he could not and did not apprehend what the terms entailed and that the court intended to include the driveway in question.

■ The test for vagueness which this court must apply is whether the terms of the rules were sufficiently precise "[to] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 161, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). In judging the specificity of the rules, however, we are mindful that Angelico was engaged in legitimate newsgathering, an activity protected by the First Amendment. *Branzberg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *United States v. Gurney*, 558 F.2d 1202, 1208 (5th Cir. 1977). It is well established that when laws may infringe upon sheltered First Amendment freedoms, the Constitution demands they be held to stricter standards of definiteness. *E. g., Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1973); *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

■ Angelico's conviction manifests an interpretation by the court, as legislative source of the rules, that Rules 3(b) and 4(b) apply to the basement driveway. We agree with appellant, however, that a person of common intelligence would not understand the regulations to have this expansive scope of application. Absent additional clarifying language in the rules, that person would read "halls" and "hallways" to include only those corridors on the interior of the Criminal Court building and not the driveway beneath the building where the interview transpired.

The State asserts that "hallways", as employed in the rules, is no more indefinite than the term "environs", used similarly in court rules upheld in *Mazzetti v. United States*, 518 F.2d 781 (10th Cir. 1975) and *Seymour v. United States*, 373 F.2d 629 (5th Cir. 1967). *Mazzetti* and *Seymour* are clearly distinguishable in that the rules withstanding attack in those decisions were substantially more specific than the language at issue here. In *Mazzetti* the court rule in paragraph (a) forbade "the taking of photographs . . . or radio or television broadcasting (or making of audio or

---

Q. And when you were going out of the foyer or lobby area that is when you first hit the cameraman and Mr. Angelico, is that correct. A. Right. He came from the left. I looked out. I really didn't expect to see anyone there. I looked out; I saw that there was nothing—no one standing directly in front of the doorway. And when we got to the doorway and started to lift the chair over the door, that's when Mr. Angelico came from the left side. R. 98.

video tapes) in any courtroom or *its environs* . . . ." (emphasis added). 518 F.2d at 781 n. 1. The rule then defined "Environs" in paragraph (c) to include "all parking areas, court related offices, and entrances to and exits from the said buildings and area . . . ." *Id.* The rule in *Seymour* was more precise. It defined environs "[as] the same floor of the building upon which the courtrooms are located." 373 F.2d at 630 n. 1.

Stated succinctly, the rules in *Mazzetti* and *Seymour* were sufficiently exact to afford persons fair warning of their wide breadth of coverage. The oblique reference to halls and hallways in Rules 3(b) and 4(b) gives no similar notice that parking lots and driveways are included within the rules' prohibition.

The State further argues that even if the rules are deemed constitutionally vague, the conviction must be sustained under *United States v. Dickinson*, 465 F.2d 496 (5th Cir. 1972), since Angelico failed to judicially challenge the rules before breaching them. In *Dickinson* a federal district court issued an order instructing reporters not to publish details of testimony at a pre-trial hearing. With full knowledge that the order applied to them and their actions violated the order, the reporters published articles on the testimony and were held in contempt. On appeal this court found the order unconstitutional, but affirmed the convictions, holding that persons may not willfully disregard a court order which is later determined invalid. The court emphasized that in circum-

stances where a person is aware that the order is directed at him, and believes it to be unconstitutional, he must obey the command until it is "reversed by orderly review or disrobed of authority by delay or frustration in the appellate process, regardless of the ultimate determination of constitutionality or lack thereof." 465 F.2d at 509–10.

We are convinced that *Dickinson* is inapplicable to the factual context of the instant case. Here, the rules were so vague that Angelico could not reasonably anticipate that his acts fell within their ambit. We feel that his violation of the rules was inadvertent.[4] In *Dickinson*, the defendants understood their activities were prohibited by the court order and deliberately disobeyed it. It would place too great of a burden on a citizen to demand that he challenge by "orderly" appellate remedies overly vague enactments which, because of their inexactness, he could not foresee having application to his conduct.

In finding Rules 3(b) and 4(b) constitutionally deficient, we do not wish to interfere with the authority of state courts to use their rulemaking power to protect the integrity and order of judicial proceedings. History has shown that rules prescribed and enforced by the judiciary are an essential prerequisite to preserving hallowed due process rights. At the same time, when such precepts intrude upon protected press freedoms, they must be specific in their delineation of activities and physical areas regulated.[5] Otherwise, newspersons will

---

4. The State advances the argument that Angelico was aware that the rules prohibited interviews and operation of cameras in the basement driveway area. As evidence of intent, it relies primarily on a previous confrontation on September 16, 1975 between Angelico and Judge Becker of the Criminal District Court. In that incident, Judge Becker ordered appellant to remove cameras from the building's interior and appellant subsequently positioned them on a ledge outside the building. Judge Becker thereafter commanded Angelico to cease photography from that site and he obeyed. This proof does not establish that appellant was cognizant that the basement driveway, a different area, was off limits. The other evidence indicates that appellant was unaware the rules extended to the driveway. A second reporter from appellant's television station had previously conducted a recorded interview in the basement driveway, which was shown on local television the same night. No charges were brought against the newsman. Angelico's statements to Officer Raymond after the interview evinced a conception that the rules did not prohibit his conduct. Moreover, at his trial appellant testified under oath that he knew of the rules but understood "hall" and "hallways" not to include the basement passageway. Therefore, in an effort to comply with the rules, he chose to interview the witness in the driveway and not in the interior foyer.

5. We refrain from deciding the question of whether a rule specifically including the basement driveway would be unconstitutionally overbroad.

not have explicit standards by which to pattern their professional behavior and the door will be opened for "arbitrary and discriminatory enforcement" of the rules. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

We vacate the district court's denial of Angelico's application for writ of habeas corpus and remand for the entry of a judgment consistent with this opinion.

VACATED and REMANDED.