FELDMAN, Justice,
concurring in part, dissenting in part.
I write separately because I believe the language in the opinion improperly circumscribes the court’s power to protect jurors, while improperly expanding the court’s power to restrict the right of the press to gather information.
The Sketch Order
If we are to invalidate the sketch order on constitutional grounds we need go no further than to note that it was ineffective. Obviously, the court cannot at the same time permit publication of sketches in the newspapers and prohibit them on television. We might also content ourselves with holding that the court cannot place itself in the position of editor by permitting sketching but preventing publication without prior approval of the sketches.
The opinion goes further, however, and intimates (At 437-438) that information regarding jurors (presumably including names, addresses and likenesses) are “in the public domain” so that such information is immune from regulation except when conduct taken to gather the information, such as sketching in the courtroom, “becomes so distracting that it presents a danger to [the] requirements of a proper trial.” (At 438.) Thus, the court disapproves of the trial court’s having “focused not on conduct [i.e. distraction] but on the content of the sketches.” (At 439.) It is here that I believe that the court goes too far in restricting the trial court’s authority.
When the First Amendment guarantee of freedom of the press clashes with the Sixth Amendment guarantee of a fair trial, courts are faced with the task of performing “a delicate balancing act.” State ex rel. New Mexico Press Association v. Kaufman, 98 N.M. 261, 263, 648 P.2d 300, 302 (1982), noting Justice Black’s observation that “free speech and fair trials are two of the most cherished policies of our civilization, and it would be a trying task to choose between them.” Id. at 264, 648 P.2d at 303 (quoting Bridges v. California, 314 U.S. 252, 260, 62 S.Ct. 190, 192, 86 L.Ed.2d 192 (1941)).
In those exceptional cases in which we are forced to choose between First and Sixth Amendment rights, the balance weighs most in favor of the Sixth Amendment when the information withheld is information which may subject jurors to influence, prejudice or pressure which may affect jury deliberations. The trial court’s power in the balance between First Amendment and Sixth Amendment rights is therefore at its greatest when dealing with jury problems. It may even impose regulations that prevent the press from obtaining the names and addresses of the jurors. United States v. Gurney, 558 F.2d 1202, 1210 (5th Cir.1977), cert. denied, sub. nom. Miami Herald Publishing Co. v. Krentzman, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); see also Capital Cities Media, Inc. v. Toole, — U.S. -, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (Brennan, Circuit Justice, 1983). In my view therefore, the court may prevent the press from obtaining likenesses of the jurors. This would include orders prohibiting photographs and orders prohibiting sketching. Of course, such drastic measures can be taken only under the most compelling circumstances, upon an adequate record and must be “narrowly *258 tailored” to protect a “compelling interest.” Id. at -, 103 S.Ct. at 3526. See also New Mexico Press Association, supra (discussing standards); Cf. Gurney, supra.
I would not limit the Court’s power to circumstances where conduct is physically “distracting” the jury. There are some cases, and this may have been one, where the jurors feel a legitimate fear that their names, addresses or pictures will be released to the public. This, no doubt, was what motivated the judge’s desire here to look at the sketches before they were published. There are cases, also, in which jurors may be catapulted into an unwelcome limelight. Such “fame” may strike at the very heart of the guarantee of a jury trial. Fear of reprisal, the quest for a verdict which will meet with community approval or worry about having to explain an unpopular verdict are matters which may distract jurors from their duty. Such distractions are more serious than pencil scratching made by a sketch artist. The Sheppard case illustrated the problems inherent in making celebrities out of jurors, causing the United States Supreme Court to comment frequently on the attention focused on the jury by the media. Sheppard v. Maxwell, 384 U.S. 333, 342-45, 353, 355, 86 S.Ct. 1507, 1512-13, 1517, 1518, 16 L.Ed.2d 600 (1966).
The language of Mr. Justice Clark is appropriate:
... The jurors were thrust into the role of celebrities by the judge’s failure to insulate them from reporters and photographers____ The numerous pictures of the jurors, with their addresses, which appeared in the newspapers before and during the trial itself exposed them to expressions of opinion from both cranks and friends____ [Tjhis publicity seriously threatened the jurors’ privacy.
Id. at 353, 86 S.Ct. at 1517.
Admittedly the danger of jury distraction should be minimized by means other than interference with representatives of the press. Sequestration is one of the devices often recommended to protect jurors from information or pressure which may affect the integrity of the trial process. New Mexico Press Association, supra. Most of the problems in the case at bench occurred at a time when sequestration was no longer possible. Even if it had been possible it would not have protected the jurors from the subtle influences of celebrity status. Sequestration does not leave jurors free from influence — it merely substitutes a different form of influence. While it is a necessary evil in some cases, sequestration is not an answer in all cases; it is a panacea most avidly advocated by those who have served as neither juror nor lawyer in a case in which the jurors have been sequestered.
It is difficult to measure the effects produced by transforming even sequestered jurors from anonymous judges of fact to celebrities who are participants in the trial and who may, therefore, feel a heightened sense of responsibility to conform to the supposed will of the community. In my view, the whole system is much better served if jurors are allowed a sense of privacy and anonymity. Thus, upon a proper record and in extraordinary cases, where public interest is great and community pressure even greater, I would give the trial judge discretion to protect the jury by a variety of means. Among them, where necessity is demonstrated in the record, would be prohibition of photographing the jury, prohibition of sketching the jury, sealing of juror’s names and addresses during trial and explicit instructions to the jurors that at the conclusion of the trial they are free to talk or refuse to talk to the press. Both explicitly and implicitly it must be brought home to the jurors that they are accountable to no one but the law and their own conscience.
The “Liaison Order”
While the majority takes. a restrictive view of the court’s power to protect the jury, I believe it is far too permissive with the court’s power to restrict the press in the exercise of its right to gather news. The court states “that the news gathering right in the context of criminal trials means nothing more nor less than the right to *259 attend.” (At 441.) This, of course, is the same right that government has graciously given the press in totalitarian societies such as Argentina, China and the Soviet Union. If the government can be permitted to erect a wall of secrecy by forbidding those with knowledge from talking to the press, then the right to attend and report what transpires is illusory; it becomes a method by which the government uses the press as a conduit to transmit the official line.
I find no legal authority for upholding an order as broad as that rendered in this case. The order enjoined all who might have knowledge about the case that they “are [not] to be in contact with the media during the course of this matter.” In effect, no communication with the reporters was permitted on any subject. The majority finds authority for this view in Sheppard v. Maxwell, supra, Gurney, supra and In re Express-News Corp., 695 F.2d 807 (5th Cir.1982). So broad an order cannot be supported by any of those cases. In Gurney, for instance, the court held it proper for the trial judge to deny press access to certain restricted classes of information, including exhibits not yet in evidence, bench conferences, grand jury testimony not read to the jury, and written communication between the judge and jury. United States v. Gurney, 558 F.2d at 1210-11. In Express-News the court recognized that the guarantee of freedom of the press included the right of the press to gather news. The court stated:
A court rule cannot ... restrict the journalistic right to gather news unless it is narrowly tailored to prevent a substantial threat to the administration of justice.
695 F.2d at 810 (emphasis supplied).
In Sheppard, the court did recognize power to curtail statements by court officers, but that recognition was not nearly so broad as the majority indicates. (At 439 and 440). Justice Clark’s words are, in fact, careful and rather restrictive. For example:
More specifically, the trial court might well have proscribed extra judicial statements by any lawyer, party, witness or court official which divulged prejudicial matter.
86 S.Ct. at 1521 (emphasis added). Sheppard does not suggest that the trial court has any right to impose an absolute prohibition against all discussion with the press.
The cases do stand for the proposition that where necessary to shield a jury panel from massive pretrial publicity or to protect against the danger that the panel or the jury, once impanelled, may be exposed to evidence which the court has ruled inadmissible, the court may impose restrictions on the nature and type of statements that may be made by court officials and lawyers. In effect, the court may prevent the lawyers from attempting to try the case in the newspapers in order to influence judge or jury. See DR 7-107(D), Rules of Professional Responsibility, 17A A.R.S. It cannot, in my view, impose a ban so broad as to virtually prohibit all communication with the press. While I agree with the majority that the court is under no obligation to help the press, I think the majority’s comment (At 441) that “we are not constitutionally mandated to provide such guidance” misses the mark. The order in question is not bad because it fails to provide guidance to the press, it is bad because it prohibits the press from gathering news. The reporter and his informant have First Amendment rights to communicate with each other. These rights cannot be lightly dismissed; any infringement on First Amendment rights must be addressed to a specific, compelling state interest and must be narrowly drawn to reach only that interest. Capital Cities Media v. Toole, supra. An absolute ban against communication with the press goes much too far. The right of access to criminal trials exists “to insure that this constitutionally protected ‘discussion of governmental affairs’ is an informed one.” Globe Newspaper Co. v. Superior Court for the County of Norfolk, 457 U.S. 596, 605, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982). I would hold, therefore, that the media liaison order is so broad that it is no *260 better than a censorship order, unconstitutional on its face.