**In re Petition of the TRIBUNE CO., the Times Publishing Company, and Miami Herald Publishing Company, Inc.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael SIERRA, et al., Defendants,**

**Tribune Company, Times Publishing & Miami Herald, Petitioners-Appellants.**

**No. 84–3547.**

United States Court of Appeals, Eleventh Circuit.

March 25, 1986.

---

Gregg D. Thomas, Steven L. Brannock, Tampa, Fla., for Tribune.

George K. Rahdert, St. Petersburg, Fla., for Times and Miami Herald.

Richard J. Ovelman, Miami, Fla., for Miami Herald.

Karen Skrivseth, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Before GODBOLD, Chief Judge, TJOFLAT, Circuit Judge and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

On October 3, 1983, The Tribune Company (Tribune), a newspaper publisher, filed a post-trial petition to intervene in a criminal case in order to obtain transcripts of bench conferences which were held in open court but out of the hearing of the attending press and public.[1] The next day the district judge ordered that any party who objected to disclosure must file his objections within seven days. None of the defendants objected but the government did respond with a general objection to disclosure of any transcripts of *in camera* conferences and a request for an opportunity to review a sealed copy of the transcripts in order to determine whether they contained portions which should be withheld from public scrutiny on other grounds. The court ordered transcripts for review by the government and a second response. Tribune responded with a request for an order requiring the government to justify its objections to disclosure in enough detail to allow for an independent analysis of the merits of the objections. Thereafter the government filed objections *in camera*. Tribune objected that the *in camera* objections denied it a fair opportunity to respond. After hearing oral argument the district court issued an order granting Tribune and two other publishers, The Times Publishing Co. (Times) and The Miami Herald Publishing Co., Inc. (Herald), access to all of the transcripts[2] except those portions of the bench conference discussions addressing matters which were the subject of government objections: (1) on-going crimi-

---

1. Tribune submitted two affidavits in support of its petition:

   In the first affidavit, a reporter who attended the trial swore that she could not fully report the trial because the length and number of bench conferences made it impossible to do so. (Record vol. 1; 4–5).

   In the second affidavit an attorney for Tribune stated that he observed a twenty minute bench conference on July 5, 1983, and requested a transcript six days later from the official court reporter who initially agreed to prepare it. The next day, however, she informed him that the court would not allow her to release the transcript. After the conclusion of the trial, the attorney asked a law clerk for a transcript but was told that it would not be released without a court order (Record vol. 1; 20–21).

2. Times and Herald had filed a joint petition to intervene while the government's initial response was pending.

nal investigations; (2) grand jury proceedings and investigations (grand jury matters); (3) conferences concerning jury selection and the adequacy of service of individual petit jurors (jury matters); and (4) materials which were potentially embarrassing to the court, counsel and third parties (embarrassing matters).

In order to assure that the publishers received adequate legal representation in further proceedings, the judge ordered disclosure of the jury matters and embarrassing matters to Tribune's attorney and to the attorney for Herald and Times, and ordered the lawyers not to reveal the contents of those materials to anyone. Those portions of these materials were ordered filed *in camera*. The court set an *in camera* hearing for May 3, 1984. At that time the government withdrew its objections to the embarrassing matters and the bulk of the sealed materials was then disclosed. The court issued a memorandum decision on June 28, 1984 addressing the merits of the parties' positions concerning disclosure of the two remaining sealed portions of the transcripts: jury matters and grand jury matters. The portions of the order which pertain to this appeal deny the publisher access to fifteen pages [3] of transcript under Fed.R.Crim.P. 6(e), "in light of the long standing presumption of grand jury secrecy", and because "the public interest in law enforcement outweighs whatever First Amendment rights of disclosure are possessed by the petitioners" (Record vol. 1, 41). (The appellant publishers take no issue with the portions of the order which address access to jury matters; consequently they will not be discussed).

On July 9, 1984, Tribune filed a motion for rehearing, in which Times and Herald later joined, which alleged that the court's decision and order addressed only a portion of the relief requested because it failed to establish procedural guidelines "that will ensure that portions of trial transcripts are not closed routinely, but are closed only after a proper showing is made by those interested in closure." The memorandum in support of Tribune's motion complained that approximately one year had transpired between the filing of the petition and the court's order which ultimately closed only a small portion of the transcripts. Tribune opined that the injury it suffered from the loss of timely reporting of the "nonsensitive" matters would have been greatly reduced if the court had held a hearing after giving notice to the press and public and required the government to show: (1) that closure was necessary; (2) that no less intrusive alternatives were available; and (3) that the restriction was drawn as narrowly as possible (rather than "completely and routinely" closing the transcripts). The memorandum submitted by Times and Herald proposed the adoption of Justice Department guidelines for the preservation of open trials, 28 C.F.R. § 50.10 (1983) as applicable to questions of access to bench conference transcripts. The district court denied the motions for rehearing without explanation and this appeal followed.

Much of the appellants' briefs is devoted to a discussion of the errors that the district court purportedly committed during the trial in ordering closure of the transcripts without first following the requirements of notice, public hearing and proof which this Court has mandated for the closure of otherwise public trials. See generally, *Newman v. Graddick,* 696 F.2d 796, 800–04 (11th Cir.1983). They further argue that the error was repeated when the judge failed to admit his previous errors in response to their motions for rehearing and issue prospective guidelines to assure that

---

**3.** Specifically, the order denied disclosure of Pages 38, 126–27, 307–311 and 450–55.

We note that the decision misconstrues pages 307–09 as bench conference transcripts. In fact those five pages record an *ex parte, in camera* discussion between the U.S. Attorney and the trial judge to determine whether certain record-ed conversations between the prosecutor and a witness were required to be disclosed under 18 U.S.C. § 3500, the "Jencks Act." Such an out of court conference does not arguably fall within Tribune's open-trial First Amendment arguments discussed *infra.*

the errors would not be repeated. All of these arguments presuppose that some sort of reviewable record was made below, yet no such order of closure appears in the record presented to this court.

■ The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records. *Id.* at 800. An order denying access is not only reviewable by this Court but is immediately reviewable regardless of the pendency of the underlying action. *Id.* Nevertheless, the publishers took no steps to preserve the purported procedural rights by availing themselves of these procedures and instead, ask this Court to review the propriety of an unrecorded oral order purportedly related to a law clerk and a court reporter in response to an informal oral request for a transcript.[4]

■ We are aware of no authority by which this Court may review mere courthouse conversation. Accordingly, we decline to review the publishers' arguments that the district court committed procedural errors prior to the filing of the first petition for access. Nor can we review the district court's response to the motions for rehearing. The publishers asked the court on rehearing to recognize procedural errors which it allegedly committed during the criminal trial and to issue guidelines to assure that those procedural errors would not be repeated. This Court cannot determine whether the judge abused his discretion in denying rehearing without reference to a record of the initial procedural error asserted in the motion for rehearing.

The one issue which remains for review is Tribune's contention that the district court erred in holding that the government's showing that the contested portions of the transcripts contained discussions of grand jury matters was sufficient *per se* to overcome its First Amendment rights of access. Tribune requests an order remanding the case for further proceedings in which the government is required to overcome a presumption of access by specific and compelling justifications for closure of each portion of the transcript. Tribune recognizes both the government's right to keep grand jury transcripts and proceedings secret and the trial court's authority to hold bench conferences in open court but out of the hearing of the attending press and public. (Reply brief pp. 3, 8–9). It argues, however, that bench conferences are part of a public trial and that the government abandons its broad right to secrecy when it discusses grand jury matters in that allegedly public forum. Tribune does not argue that it has an unqualified right to access but only that the court must balance the specific secrecy interests at stake against a First Amendment presumption of public access to court proceedings and the benefits which flow from public access.[5]

The former Fifth Circuit addressed the question of whether the press should be granted access to bench conference summaries during the course of a criminal trial and held that:

> Bench conferences between judge and counsel outside of public hearing are an established practice, ... and protection of their privacy is generally within the court's discretion.... Such conferences are an integral part of the internal management of a trial, and screening them from access by the press is well within a trial judge's broad discretion.

*United States v. Gurney,* 558 F.2d 1202, 1210 (5th Cir.1977) *cert. denied, Miami*

---

4. See note 1, *supra.*

5. Tribune also argues that 28 U.S.C. § 753(b), which has been interpreted as requiring transcription of bench conferences, see *e.g. U.S. v. Brumley,* 560 F.2d 1268 (5th Cir.1977), and which specifically provides for public access to transcripts, creates a right of access which would exist even in the absence of the First Amendment. Tribune does not argue that § 753(b) creates an absolute right but that it

recognizes a presumption of access which may only be overcome by showing a specific, compelling need for closure. Because this standard is the same as that urged by Tribune for First Amendment analysis, and because we hold, *infra,* that the specific, compelling need for closure has been shown, the statute will not be analyzed separately.

*Herald Publishing Co. v. Krentzman,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978) [footnote and citation omitted] *overruled in part on other grounds, Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) *as noted* in *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 426–27 (5th Cir.1981).

Tribune argues that the above holding from *Gurney* does not apply to post trial release of transcripts and that *Gurney* has been superseded by intervening Supreme Court and Eleventh Circuit cases which have firmly established the public's First Amendment right of access to trials and which require a showing of a specific, compelling reason for closing access to each public part of that trial, *e.g., Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Press Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Richmond Newspapers, Inc. v. Virginia* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Newman v. Graddick,* 696 F.2d 796.

■ We need not decide whether the above holding from *Gurney* retains its vitality in this case, nor do we need to remand the case for further proceedings. The courts retain an obligation, independent of that owed by the United States Attorney, to preserve the secrecy of grand jury proceedings and the privacy of jurors. The transcripts still sought by Tribune, with the exception of page 38, consist of discussions between court and counsel as to the admissibility of certain testimony that the government sought to elicit from witnesses who testified at trial. The "specific and compelling" reasons for closure which the Tribune would have the government show was specifically found by the district court in its memorandum decision:

> ... The events associated with the instant trial provoked numerous investigations into the operations of local government. These investigations far exceeded the scope of the instant indictment. However, the spin off investigations into political corruption and the trial in this case were intimately related.

When ruling on certain evidentiary matters there are times when the trial court needs to know the context in which the government presents or supports particular evidence. In other words the predicate for a certain piece of evidence may be laid by grand jury testimony or reference to an on-going investigation. When such information is released at a bench conference where the government seeks to ensure confidentiality, the information or testimony does not automatically become public information.

Even if we were to hold, as requested by Tribune, that bench conference transcripts are presumed to be open to the public and that side bar discussion of grand jury matters waives any right to a presumption of secrecy, we would be forced to find that, in this case, the right of privacy was not waived.

It is elementary that an *in camera* inspection of evidence is always a procedure calling for scrupulous protection against any release or publication of material not found by the court, at that stage, probably admissible in evidence and relevant to the issues for which it is sought.

*United States v. Nixon,* 418 U.S. 683, 714, 94 S.Ct. 3090, 3110–11, 41 L.Ed.2d 1039 (1974).

■ With the exception of page 38, all of the contested transcripts contained references to then pending collateral investigations or prosecutions of testifying witnesses which were immaterial to the issues raised in the instant trial itself, but which were properly discussed at the bench to show the relevancy of anticipated impeaching evidence. The government was privileged to present its arguments with reference to the grand jury proceedings in confidence to the court and to opposing counsel without jeopardizing its then pending investigation. Therefore, we hold that the court committed no error in denying access to pages 126–27, 307–11 and 450–55.

■ Nor do we find any reason to remand the question of closure of page 38. There the government sought to challenge

for cause a venireman's selection as a juror by informing the court that he was the unknowing employee of a government agency which was the target of a then pending secret grand jury probe. The balance between the public's First Amendment rights to view *voir dire* on the one hand and the juror's privacy interests and the government's interests in preserving the secrecy of its investigations on the other, must clearly be struck in favor of closure in this instance. *United States v. Harrelson,* 713 F.2d 1114 (5th Cir.1983); see also, *Press-Enterprise Co. v. Superior Court,* 464 U.S. at 511, 104 S.Ct. at 825.

Accordingly, we Affirm the decision of the district court.

AFFIRMED.