781 F.2d 1443
 54 USLW 2437, 12 Media L. Rep. 1739
 The RADIO AND TELEVISION NEWS ASSOCIATION OF SOUTHERN
CALIFORNIA, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent,
Joel Levine, Stanley I. Greenberg, Richard Miller and United
States of America, Real Parties in Interest.
 No. 85-7524.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 8, 1985.
Decided Feb. 10, 1986.
 
 Kent Farnsworth, Paul, Hastings, Janofsky & Walker, Santa Monica, Cal., for petitioner.
 Robert C. Bonner, U.S. Atty., Robert L. Brosio, Russell Hayman, Asst. U.S. Attys., Los Angeles, Cal., for respondent.
 Petition for Writ of Mandamus to the United States District Court for the Northern District of California.
 Before SNEED, NELSON and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 The Radio and Television News Association, an organization representing broadcast journalists, filed this petition for a writ of mandamus seeking to compel the district court to vacate its amended restraining order. That amended order restrains trial counsel for a criminal defendant from making extrajudicial statements to members of the news media. We hold that restraints on the statements of trial participants, although indirectly denying the media access to those participants, do not infringe freedom of the press under the first amendment. Accordingly, we deny the petition.
 
 
 2
 * BACKGROUND
 
 
 3
 In Levine v. U.S. District Court, 764 F.2d 590 (9th Cir.1985), we considered a petition brought by Richard A. Miller and his attorneys, Stanley I. Greenberg and Joel Levine, seeking a writ of mandamus to compel the district court to dissolve a restraining order that prohibited the attorneys involved in Miller's trial from communicating with the media regarding the merits of the case. Miller, a former special agent with the Federal Bureau of Investigation, was then awaiting trial on espionage charges in the district court. The circumstances of that case and the conduct of counsel which lead to the district court's restraining order are set out fully in that opinion. Id. at 591-93.
 
 
 4
 We held that the record supported the district court's conclusion that a restraining order was necessary to reduce prejudicial publicity impairing the fairness of the trial and threatening the integrity of the judicial system. Id. at 598. However, we concluded that the district court's order restraining counsel from making any public statements about "any aspect of this case that bears upon the merits to be resolved by the jury" was overbroad. Id. at 599. The district court was ordered to fashion an order specifying the proscribed types of extrajudicial statements which "pose a serious and imminent threat to the administration of justice" in this case. Id.
 
 
 5
 The district court, following a hearing, amended its restraining order on July 23, 1985. The court held that "a serious and imminent threat to the administration of justice" still existed. The amended order prohibits counsel from making extrajudicial statements to members of the news media relating to several subjects.[1]
 
 
 6
 A trial of Miller on these criminal charges has since been conducted and ended with the jury unable to reach a verdict. Miller is presently awaiting retrial on those espionage charges.
 
 
 7
 The Radio and Television News Association, representing broadcast journalists, filed this petition for a writ of mandamus alleging that the order is an unconstitutional prior restraint infringing freedom of the press.
 
 II
 JURISDICTION
 
 8
 We have jurisdiction to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. Sec. 1651(a).[2] However, a writ of mandamus should be issued only in extraordinary circumstances, as determined by reference to five guidelines:
 
 
 9
 (1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 10
 Bauman v. United States District Court, 557 F.2d 650, 654-55 (9th Cir.1977) (citations omitted).
 
 
 11
 The first two guidelines weigh in favor of an exercise of the court's mandamus jurisdiction. Prior restraints may be challenged by way of a petition for a writ of mandamus. See Levine, 764 F.2d at 593-94. As with Levine, the fourth Bauman guideline does not apply in this case. See id. at 594. The fifth Bauman guideline might appear to be applicable as the petition raises the issue of the press' interest in a restraining order against trial participants. However, in light of Supreme Court and other case precedent defining the rights of the press with regard to criminal trials, we believe this guideline is not applicable in this case.
 
 
 12
 As in the Levine case, issuance of a writ depends on the third Bauman guideline. See Levine, 764 F.2d at 594. The RTNA must show that the district court's order is "clearly erroneous as a matter of law." Bauman, 557 F.2d at 654-55.
 
 III
 FREEDOM OF THE PRESS
 
 13
 The Radio and Television News Association of Southern California (RTNA), an umbrella organization representing all broadcast journalists in southern California, filed this petition for a writ of mandamus seeking to compel the district court to vacate the amended restraining order. The RTNA claims that the order, by effectively denying media access to the trial participants, constitutes an unconstitutional restraint on the media's ability to gather news.
 
 
 14
 The RTNA argues, first, that there has been no demonstration of a serious and imminent threat to either Miller's right to a fair trial or to the administration of justice and, second, that the district court failed to make express findings in support of its amended restraining order as directed by this court.
 
 
 15
 In Levine, we noted the tenuous nature of the first amendment interest articulated on behalf of the press with regard to an order restraining, not the press, but trial participants. See 764 F.2d at 594. However, we declined to reach that issue as defendant's counsel lacked standing to assert the constitutional rights of nonparty media organizations. Id. Now that issue is placed squarely before us.
 
 
 16
 The RTNA has demonstrated a sufficient stake in this controversy to establish standing to raise freedom of the press concerns under the first amendment. There are two elements to standing. First, the plaintiff must allege an "injury in fact" sufficient to show a "personal stake" in the outcome of the legal action. Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 438 U.S. 59 (1978); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). As the district court's order impairs the media's ability to gather news by effectively denying the media access to trial counsel, a concrete personal interest is affected.
 
 
 17
 Second, the plaintiff must show that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, 397 U.S. at 153, 90 S.Ct. at 830. Although we conclude otherwise on the merits, the RTNA asserts an interest that is at least "arguably" protected by the first amendment. The RTNA, therefore, has standing to bring this petition.
 
 
 18
 However, as we indicated in Levine, 764 F.2d at 594, the impact on the media in this case is significantly different from situations where the media is denied access to a criminal trial or is restricted in disseminating any information it obtains. We have invalidated as unconstitutional prior restraints on the reporting of events relating to a criminal proceeding. E.g., CBS, Inc. v. United States District Court, 729 F.2d 1174, 1178-79 (9th Cir.1984); see Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); ABA Standards for Criminal Justice Standard 8-3.1 (1982). We have also invalidated restraints on the access of the media to criminal proceedings. Associated Press v. United States District Court, 705 F.2d 1143, 1145-47 (9th Cir.1983); see Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).
 
 
 19
 In contrast, the district court's order in this case is not directed toward the press at all. On the contrary, the media is free to attend all of the trial proceedings before the district court and to report anything that happens. Levine, 764 F.2d at 594. In fact, the press remains free to direct questions at trial counsel. Trial counsel simply may not be free to answer. In sum, the media's right to gather news and disseminate it to the public has not been restrained.[3] See id.
 
 
 20
 As we noted in Levine, the district court's order "raises a freedom of the press issue that is analytically distinct from the issues that were raised in Associated Press and CBS." Id.; see Sack, Principle and Nebraska Press Association v. Stuart, 29 Stan.L.Rev. 411, 427-28 (1977) (noting the "fundamental difference" between a restraining order against the press and a restraining order against trial participants). Rather, the RTNA asserts a first amendment right of full access to trial participants. This assertion is not supported by constitutional case law. See Pell v. Procunier, 417 U.S. 817, 829-35, 94 S.Ct. 2800, 2807-11, 41 L.Ed.2d 495 (1974) (in holding that freedom of the press was not infringed by government restrictions on interviews with prison inmates, Court rejected media assertion of "right of access to the sources of what is regarded as newsworthy information").
 
 
 21
 The press does enjoy a constitutional interest in access to our criminal courts and criminal justice process. In Richmond Newspapers, 448 U.S. 555, 576, 100 S.Ct. 2814, 2827, 65 L.Ed.2d 973 (1980) (plurality), the Supreme Court affirmed the first amendment "right of access" or "right to gather information" granted to the press with respect to criminal trials. However, the Court described that right only as a right to sit, listen, watch, and report. Id. See also KPNX Broadcasting Co. v. Superior Court, 139 Ariz. 246, 678 P.2d 431, 441 (1984).
 
 
 22
 In Nixon v. Warner Communications, Inc., 435 U.S. 589, 609, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978), the Supreme Court held that "[t]he First Amendment generally grants the press no right to information about a trial superior to that of the general public." See also Branzburg v. Hayes, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) (first amendment "does not grant the press a constitutional right of special access to information not available to the public generally."). See generally Comment, News-Source Privilege in Libel Cases: A Critical Analysis, 57 Wash.L.Rev. 349, 354-57, 360-62 (1982) (Supreme Court rejects "structural model" of first amendment granting to the press rights superior to those of the public). As with the public, the press has no greater privilege than the right to attend the trial. See Associated Press, 705 F.2d at 1145.
 
 
 23
 In short, the media's "right to gather information" during a criminal trial is no more than a right to attend the trial and report on their observations. KPNX Broadcasting Co., 678 P.2d at 439-42 (1984) (holding that limitations on the media's ability to interview trial participants do not violate the first amendment); see United States v. Hastings, 695 F.2d 1278, 1280 (11th Cir.1983) (press' right of access is right to attend, not to televise criminal trial).
 
 
 24
 The media is granted access to the same information, but nothing more, that is available to the public. See Pell v. Procunier, 417 U.S. at 835, 94 S.Ct. at 2810 (rights of media are not infringed by regulation restricting interviews with specific state prison inmates, as this does not deny the press access to information available to the general public); Saxbe v. Washington Post Co., 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974) (same holding regarding interviews with federal prison inmates). The district court having determined that the free speech rights of the trial counsel must be restrained, the media has no greater right than the public to hear that speech.
 
 
 25
 The media never has any guarantee of or "right" to interview counsel in a criminal trial. Trial counsel are, of course, free to refuse interviews, whether or not restrained by court order. If such an individual refuses an interview, the media has no recourse to relief based upon the first amendment.
 
 
 26
 As a further example, and by way of analogy, elements within the government may use the press for their own purposes through "leaking" of information. Were the government to restrain the press from publishing that "leaked" information, a freedom of the press issue would be clearly presented. As one commentator has said, "When 'Deep Throat' has spoken and is believed, Woodward, Bernstein and Bradlee are free to publish." Sack, supra, 29 Stan.L.Rev. at 420. Were the government, instead, to order its officers not to engage in "leaking," the press would have no "right" to challenge that practice. See id. at 428 (while it is permissible to swear to secrecy clerks privy to conferences of Supreme Court justices, it would be an abridgement of freedom of the press to restrict reporting of discussions a journalist learned had taken place during such a conference).
 
 
 27
 In sum, the media's collateral interest in interviewing trial participants is outside the scope of protection offered by the first amendment. KPNX Broadcasting Co., 678 P.2d at 439. The media's desire to obtain access to certain sources of information, that otherwise might be available, is not a sufficient interest to establish an infringement of freedom of the press in this case.
 
 
 28
 Consequently, we are not required to consider whether the district court's amended restraining order can withstand strict scrutiny as a prior restraint on constitutional freedom of the press. See Saxbe v. Washington Post Co., 417 U.S. at 849, 94 S.Ct. at 2814 ("delicate balancing" of government interest against first amendment unnecessary where sole limitation on press is restriction on access to prison inmates for interviews).
 
 
 29
 We need only "examine whether the restrictions imposed are reasonable and whether the interests [of the government] override the very limited incidental effects of the [order] on First Amendment rights." KPNX Broadcasting Co., 678 P.2d at 441 (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 616, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (Burger, C.J., dissenting)). The restrictions imposed also must not serve an illegitimate purpose. See Pell v. Procunier, 417 U.S. at 830, 94 S.Ct. at 2808 (regulation of interviews with prison inmates was not intended to conceal conditions in prisons or frustrate press investigations of such conditions).
 
 
 30
 The district court found that restrictions on the extrajudicial statements of trial counsel to the press were necessary to reduce prejudicial publicity. We cannot say it was unreasonable for the district court to conclude that statements by trial counsel on matters bearing on the merits of the trial might impair the fairness of the trial or threaten the integrity of the judicial process. Nor is there any indication in the record that the district court's order was intended to conceal the workings of the criminal justice system. The press remains free to attend the trial and scrutinize the fairness of the proceedings. On the basis of this limited standard of review, the district court's amended restraining order is "reasonable" and serves a legitimate purpose.
 
 IV
 FREEDOM OF SPEECH
 
 31
 Defendant's trial counsel, who are restrained by the district court's amended order, have not joined this action. The RTNA lacks standing to assert the free speech constitutional rights of the nonparty trial counsel in challenging this order. See Levine, 764 F.2d at 594; Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3531.9 (1984). Consequently, we need not determine whether the district court's amended restraining order complies with our decision in Levine v. United States District Court.
 
 
 32
 The petition for a writ of mandamus is DENIED.
 
 NELSON, Circuit Judge, concurring:
 
 33
 I agree with the majority that the Radio and Television News Association (RTNA) has not alleged a cognizable first amendment violation. I also agree that the RTNA does not have standing to allege a freedom of speech interest on behalf of defendant's trial counsel. I write separately to note that I would not have permitted the district court gag order in the first place. (See Levine v. United States District Court, 764 F.2d 590, 603 (Nelson, J., concurring in part, and dissenting in part).
 
 
 34
 In addition, I question whether the district court, by its wholesale adoption of the six categories of prohibited subjects, complied entirely with this court's order to "fashion an order specifying the proscribed types of statements" (emphasis added) based on a determination of which types of extrajudicial statements threatened the empaneling of an impartial jury. I stress that I would not require exquisitely detailed findings to justify every aspect of a restraining order. However, in this constitutionally sensitive area of prior restraints and the first amendment, I would expect the district court to set forth a brief rationale for each of the categories of proscribed statements it adopts.
 
 
 
 [1]
 In Levine v. United States District Court, we held that the district court must fashion an order specifying the proscribed types of statements which pose a serious and imminent threat to the administration of justice. 764 F.2d at 599. By way of example, we noted it would be appropriate to proscribe statements relating to six subjects:
 (1) The character, credibility, or reputation of a party;
 (2) The identity of a witness or the expected testimony of a party or a witness;
 (3) The contents of any pretrial confession, admission, or statement given by a defendant or that person's refusal or failure to make a statement;
 (4) The identity or nature of physical evidence expected to be presented or the absence of such physical evidence;
 (5) The strengths or weaknesses of the case of either party; and
 (6) Any other information the lawyer knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.
 Id.
 In its amended restraining order, the district court adopted these six subject categories.
 
 
 [2]
 The RTNA petitions this court for a writ of mandamus in the first instance without first intervening in the district court below to challenge the amended restraining order. Thus, the district court was not asked to consider the impact of the amended restraining order on the media's first amendment right to freedom of the press. Consequently, the district court made no findings on this issue
 
 
 [3]
 Undoubtedly, access to trial participants would assist the media in understanding the issues, litigation strategies, and evidence presented in the criminal proceeding. But the "right to gather information" does not include a constitutional "right" to understand what has been gathered. The press must rely upon its own resources to interpret and articulate the information it has obtained. We note in this respect that many news organizations have retained the services of attorneys and legal scholars to assist in reporting and editorial commentary on legal matters, such as newsworthy court proceedings