Clifford Eugene DAVIS, Jr.; United States of America, Plaintiffs–Appellees,

v.

**EAST BATON ROUGE PARISH SCHOOL BOARD, a corporation, Defendant–Appellee,**

v.

**CAPITAL CITY PRESS; Bill Pack; Louisiana Television Broadcasting Corporation, doing business as WBRZ–TV, Intervenors–Appellants.**

No. 96–30153.

United States Court of Appeals, Fifth Circuit.

March 15, 1996.

---

Robert C. Williams, Baton Rouge, LA, for Clifford Eugene Davis, Jr., plaintiff-appellee.

Brian Anthony Jackson, U.S. Attorney's Office, Baton Rouge, LA, for United States of America, plaintiff-appellee.

Charles L. Patin, Jr., Baton Rouge, LA, Michael Charles Garrard, Gregg R. Kronenberger, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for East Baton Rouge Parish School Board, a Corporation, defendant-appellee.

Jack M. Weiss, Mark Benjamin Holton, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, for intervenors-appellants.

Thomas S. Leatherbury, Vinson & Elkins, Dallas, TX, Merril Jay Hirsh, Curtis E. Von Kamn, Farhana Y. Khera, Ross, Dixon and Masback, Washington, DC, Andrew James Logan, Vinson & Elkins, Houston, TX, for amici curiae.

Before KING, GARWOOD and DENNIS, Circuit Judges.

KING, Circuit Judge:

Capital City Press, Bill Pack, and the Louisiana Television Broadcasting Corporation d/b/a WBRZ–TV appeal from the district court's February 22, 1996 denial of their motion to vacate the court's February 6, 1996 confidentiality order, from the district court's March 1, 1996 amended confidentiality order, and from the district court's March 8, 1996 order for private sessions. We must decide whether the district court's orders violate news agencies' rights protected by the First Amendment.

## I. BACKGROUND

Prior to 1954, the East Baton Rouge Parish school system was racially segregated as a matter of law. This school desegregation case was filed in 1956 following the decisions in *Brown v. Board of Educ.*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and *Brown v. Board of Educ.*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). For the past forty years, the district court has maintained continuing jurisdiction over this case under *Swann v. Charlotte–Mecklenburg Board of Educ.*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), to ensure that the East Baton Rouge Parish School Board (the "Board") fulfills its duty to eliminate all vestiges of segregation from its school system. The history of this case is set out in greater detail in past decisions of this court, including *Davis v. East Baton Rouge Parish Sch. Bd.*, 721 F.2d 1425 (5th Cir. 1983).

In late January or early February 1996, the newly elected Board, through its newly retained counsel, indicated to the district court that it was interested in formulating a proposed desegregation plan to finally end this litigation. The Board members indicated to the district court that they wished privately to discuss among themselves, their attorneys and some members of their staff, all aspects of a possible desegregation plan, as well as privately to plan the Board's strategy for negotiating the proposed plan with the adverse parties to the litigation.

At the Board's request, on February 6, 1996, the district court entered an order prohibiting the members of the Board, its attorneys, employees, and other agents from discussing "any aspects of any drafts of desegregation plans" with anyone other than the parties to the litigation (the "February 6th order").[1] The Board did not make a formal motion requesting this order, nor did the district court enter findings or written or oral reasons supporting the order. On February 14, 1996, the Capital City Press, Bill Pack, and the Louisiana Television Broadcasting Corporation d/b/a WBRZ–TV (collectively, the "news agencies") filed a motion to intervene to challenge the February 6th order as a violation of their First Amendment rights, and a motion to vacate the February 6th order. The Capital City Press publishes *The Advocate,* the Baton Rouge daily newspaper. Bill Pack is a reporter for *The Advocate* who has successfully investigated the Board's actions regarding desegregation in the past. The Louisiana Television Broadcasting Corporation d/b/a WBRZ–TV broadcasts one of the local news programs in Baton Rouge.

On February 22, 1996, the district court held a hearing on the news agencies' motions, and entered an order granting the motion to intervene and denying the motion to vacate (the "February 22nd order"). At the hearing, the district court orally explained its reasons for entering the February 6th order and for denying the news agencies' motion to vacate the February 6th order. The court, citing the oath of silence taken by the participants in the Constitutional Convention, reasoned that "there are some things, some public matters, that are better discussed and argued about in private than they are in public." The district court noted that although past East Baton Rouge Parish School Boards had been unwilling to accept their responsibility to desegregate the schools, the present Board was finally ready and willing to formulate a desegregation plan. The court stated that it issued the February 6th order to give the Board an opportunity to hash out the relevant issues in private, without interference from the public or the news media, in order to facilitate and expedite the Board's formulation of a proposed desegregation plan.

On February 26, 1996, the district court entered written Supplemental Reasons for its February 6th and 22nd orders (the "February 26th order"). The February 26th order reiterated the history of unwillingness on the part of the Board, and its current readiness to work to desegregate the school system. The district court stated that in entering its February 6th order, it "merely afforded the School Board an opportunity to negotiate in private—a chance for discussion unimpeded by outside sources." The court emphasized that its order expressly authorizes the Board to disseminate its proposal to the public once

---

1. The February 6 order reads in its entirety:

 IT IS ORDERED that, until further order of this court, the East Baton Rouge Parish School Board, and each and all of its members, officers, employees, staff, agents, attorneys and all others acting or purporting to act for or on behalf of the East Baton Rouge Parish School Board are hereby prohibited from making any written or oral comments to any person or entity other than representatives and attorneys for litigants in the above captioned case concerning any aspects of any drafts of desegregation plans in connection with the East Baton Rouge Parish school system. All litigants [are], of course, free to fully discuss all matters among themselves.

 IT IS FURTHER ORDERED that prior to filing by the East Baton Rouge Parish School Board of any final proposed desegregation plan the East Baton Rouge Parish School Board is authorized to disseminate any such plan to the public.

 IT IS FURTHER ORDERED, however, that this Order shall not prohibit any of the above referenced parties from stating that an Order of this Court prohibits them from making any written or oral comments concerning any draft of desegregation plans.

it has been created. Additionally, the court rejected the news agencies' arguments that the February 6th order was procedurally defective because it was entered without a written motion, without supporting findings, or without affording the press or public notice and an opportunity to be heard. The court stated that "the [February 6th] order is necessary to afford the members of the School Board a realistic chance at arriving at a proposed desegregation plan." The court also justified the February 6th order as an exercise of its equitable powers to fashion orders in desegregation cases under *Swann v. Charlotte–Mecklenburg Board of Educ.*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). The court admitted that the order may have been "inartfully drawn," in that it applied to all of the more than 7,000 School Board employees, and accordingly, the court directed counsel for the Board to prepare and submit an amendment. The court concluded, however, that "[t]he necessity for the [February 6th] order clearly outweighs the 'amorphous "hope to hear"' rights of the news media." Finally, the court asserted that "there are no practical alternatives that would effectively safeguard the Board's progress in bringing this matter to a conclusion after forty years."

After filing a notice of appeal, on February 29, 1996, the news agencies filed an Emergency Motion for Expedited Appeal of District Court's Order Refusing to Vacate Confidentiality Order, and, Alternatively, Emergency Petition for Writ of Mandamus, as well as their original appellants' brief. On March 1, 1996, the district court entered an order amending the February 6th order by limiting the scope of the order to the members of the Board, the Superintendent, the Board's attorneys, and twenty-three specifically named staff members and employees (the "March 1st order" or the "confidentiality order").[2]

On March 4, 1996, the news agencies filed an amended notice of appeal and an amended emergency motion for expedited appeal/petition for writ of mandamus, adding review of the March 1st order to their appeal. Also on March 4th, the Board filed a motion to dismiss the appeal, to which the news agencies responded. On March 7, 1996, the Board filed a memorandum in opposition to the motion to expedite the appeal. Later that day, we granted the news agencies' motion to expedite their appeal and we denied the Board's motion to dismiss.

On March 8, 1996, the district court entered a third order relating to the confidentiality of the Board's activities in formulating a desegregation plan (the "March 8th order"). The March 8th order directed the Board to conduct private meetings to compose a proposed desegregation plan and ordered the participants in the meetings to keep the meetings and any drafts of desegregation plans confidential.[3] Having learned

---

**2.** The March 1 order reads in its entirety:

The confidentiality order entered by the Court on February 6, 1996, is hereby amended to read in its entirety as follows:

IT IS ORDERED, until further order of this court, that the members of the East Baton Rouge Parish School Board, its superintendent, staff members ... [naming twenty-three individuals], and General Counsel, Maxwell G. Kees, and its attorneys of record, consultants and experts in the above captioned case are hereby prohibited from making any written or oral comments to any other person or entity in connection with any aspect of any drafts of desegregation plans concerning the East Baton Rouge Parish School System. All litigants are, of course, free to fully discuss all matters among themselves.

IT IS FURTHER ORDERED that prior to filing by the East Baton Rouge Parish School Board of its proposed desegregation plan the East Baton Rouge Parish School Board is authorized to disseminate the draft of its proposed desegregation plan to the public, in accordance with the reasons stated in the Supplemental Reasons issued by the Court on February 26, 1996.

IT IS FURTHER ORDERED, however, that this order shall not prohibit any of the above referenced and named parties from stating that an order of this court prohibits them from making any written or oral comments concerning any aspects of any drafts of such desegregation plans while this order is in effect.

**3.** The March 8th order reads in its entirety:

Considering the foregoing "Motion for Order Allowing Private Sessions," filed by the Defendant, East Baton Rouge Parish School Board (hereinafter the "School Board") and in an effort to allow the School Board to expedite an orderly process of having the Superintendent of the School Board submit a draft of a possible desegregation plan (hereinafter referred to

that the Board intended to meet secretly over the weekend of March 9 and 10, 1996, the news agencies immediately filed an emergency motion for a stay of the March 8th order pending this appeal. We granted the news agencies' motion and stayed the March 8th order.

On March 11, 1996, the news agencies filed a second amended notice of appeal, appealing from the March 8th order, as well as the March 1st order and the February 22nd order denying the news agencies' motion to vacate the February 6th order.

## II. DISCUSSION

In addressing this interlocutory appeal by a non-party, we must first examine two preliminary issues: whether appellate jurisdiction exists and whether the news agencies have standing to challenge the district court's March 1st and March 8th orders.[4] We will then address the merits of the appeal—whether the March 1st and March 8th orders violate the First Amendment.

### A. JURISDICTION

The first question we must address is the appealability of the March 1st and the March 8th orders. Our jurisdiction is governed by 28 U.S.C. § 1291, which provides that "the courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts ..." 28 U.S.C. § 1291. In *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court expansively interpreted the final decision requirement of § 1291 by creating the collateral order doctrine. *See* 15A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d,* § 3911 (1992). The collateral order doctrine establishes that certain decisions of the district court are final in effect although they do not dispose of the litigation. *See United States v. Chagra,* 701 F.2d 354, 358 (5th Cir.1983). Appealable collateral orders include "those district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Digital Equip. Corp. v. Desktop Direct, Inc.,* —— U.S. ——, ——–——, 114 S.Ct. 1992, 1995–96, 128 L.Ed.2d 842 (1994); *see Chaves v. M/V Medi-*

as "the draft") to the public and the news media for the public's consideration prior to any vote by the School Board on the adoption of a final proposed plan for filing into the record of this lawsuit:

IT IS ORDERED that the School Board shall meet in private confidential sessions, under the sole auspices, and pursuant to the authority of this Court with its Superintendent, staff, consultants, and attorneys for the purpose of reviewing and discussing the work of the Superintendent, staff, consultants and attorneys on the preliminary version(s) of the draft, and for the purpose of providing whatever guidance or direction the members of the School Board may deem appropriate, and in such form or by such procedures as it may deem necessary, to the Superintendent, staff, consultants and attorneys concerning the preparation of the draft.

IT IS FURTHER ORDERED that all of the above private sessions and all preliminary version(s) of the draft shall remain confidential and private until further order of the court.

IT IS FURTHER ORDERED that the School Board shall, at an appropriate time, make the draft available to the public and the news media, at such cost as permitted by state law, and further that the School Board shall conduct such public hearings, forums and other

activities in connection with the draft as the School Board deems appropriate in order to obtain information concerning the public's reaction, desires and concerns regarding the draft so that appropriate changes, which will not threaten the constitutionality of any final proposed plan, can be made to the draft after receiving information concerning the public's reactions, desires and concerns and prior to any vote on the adoption by the School Board of any final proposed plan for filing in the record of this lawsuit.

4. The district court's March 1st order amends and replaces the court's February 6th order; the district court effectively vacated the February 6th order by entry of the March 1st order. Therefore, we need not address the validity of the February 6th order. The news agencies also appeal from the district court's February 22nd order denying their motion to vacate the February 6th order. Because we hold that the March 1st order effectively vacated the February 6th order, the news agencies' appeal of the district court's denial of their motion to vacate the February 6th order is moot. Therefore, our review is limited to the validity of the district court's March 1st and March 8th orders—the only orders remaining in effect.

*na Star,* 47 F.3d 153, 155 (5th Cir.1995) (additionally requiring that the order concern "an important or serious and unsettled question" of law). We have previously held on several occasions that members of the news media, although not parties to litigation, can appeal court closure orders or confidentiality orders under the collateral order doctrine. *Chagra,* 701 F.2d at 359; *United States v. Gurney,* 558 F.2d 1202, 1207 (5th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978).

■ The March 1st order and the March 8th order are appealable under the collateral order doctrine. Both decisions are conclusive and would be effectively unreviewable on appeal from final judgment. The subject of the orders—the confidentiality of the Board's formulation of a proposed desegregation plan—is completely separable from the merits of the litigation—the desegregation of the school system itself. Finally, the appeal, concerning the First Amendment rights of the news media to receive information about the formulation of the desegregation plan, raises important and unsettled questions of law.

## B. STANDING

■ Having determined that we have jurisdiction over the appeal from the March 1st and the March 8th orders, we must now consider whether the news agencies have standing to challenge these orders. To establish standing, the news agencies must show an injury in fact that is fairly traceable to the challenged act and that is likely to be redressed by the requested remedy. *Valley Forge Christian College v. Americans United For Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 556 (5th Cir.1996). Several courts have held that news agencies have standing to challenge confidentiality orders in an effort to obtain information or access to judicial proceedings, although they are neither parties to the litigation nor restrained directly by the orders. *See, e.g., Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 777 (3d Cir.1994); *In re Application of Dow Jones & Co.,* 842 F.2d 603, 608 (2d Cir.), *cert. denied,* 488 U.S.

946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988); *Journal Publishing Co. v. Mechem,* 801 F.2d 1233, 1235 (10th Cir.1986); *Radio & Television News Ass'n v. United States Dist. Court,* 781 F.2d 1443, 1445 (9th Cir.1986); *Gurney,* 558 F.2d at 1206; *CBS, Inc. v. Young,* 522 F.2d 234, 238 (6th Cir.1975).

In this case the only element of standing that is disputable is whether the news agencies have alleged an injury in fact. The district court's March 1st order directs the Board, its attorneys, and several of its employees to refrain from making written or oral comments about any aspects of any drafts of the Board's proposed desegregation plan. The March 8th order directs the Board to meet in private confidential sessions to formulate a proposed desegregation plan, and further orders the Board and its attorneys and employees to keep confidential all of the private sessions and all preliminary versions of the proposed desegregation plan. The combined effect of these orders, as the district court recognized, is to severely impede the news agencies' ability to discover information about the Board's process in formulating a proposed desegregation plan.

■ The First Amendment provides at least some protection for the news agencies' efforts to gather the news. *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 2656–57, 33 L.Ed.2d 626 (1972); *see Gurney,* 558 F.2d at 1208; *CBS, Inc.,* 522 F.2d at 238. In addition, the First Amendment protects the news agencies right to receive protected speech. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756–57, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346 (1976) ("[W]here a speaker exists ... the protection afforded is to the communication, to its source and to its recipients both ... [W]e acknowledg[e] that this Court has referred to a First Amendment right to 'receive information and ideas,' and that freedom of speech 'necessarily protects the right to receive.'"). The Board argues that the First Amendment right to receive speech only comes into existence once a willing speaker has been shown to exist, relying on *Virginia State Bd. of Pharmacy,* 425 U.S. at 756, 96 S.Ct. at 1823 ("Freedom of speech presupposes a willing speaker."). The news agencies respond that, even absent a willing speaker, they would have standing by virtue

of their independent First Amendment right to gather the news. Indeed, many circuits have found media standing to challenge confidentiality orders without expressly finding the existence of a willing speaker. *See, e.g., Dow Jones & Co.,* 842 F.2d at 607 ("It is hard, in fact, to imagine that there are no willing speakers. Without them there would be no need for a restraining order; it would be superfluous."); *CBS, Inc.,* 522 F.2d at 238 (finding media standing without discussing a willing speaker requirement).

■ We need not and do not decide whether, in every case, the media must demonstrate the existence of a willing speaker to establish standing to challenge a court's confidentiality order, because, in the present case, we are satisfied that a willing speaker exists. At the district court's February 22nd hearing, the news agencies and the Board stipulated that, prior to the entry of a confidentiality order, the news agencies were able to discover information about desegregation of the school system—i.e., they stipulated that members and employees of the Board were willing speakers on this issue prior to the district court's original confidentiality order.[5] *See Dow Jones,* 842 F.2d at 607 (discussing the existence of a willing speaker to show that the news agencies had standing to

challenge a confidentiality order). The parties also stipulated that the Board's efforts in preparing a desegregation plan were newsworthy and of great public interest in the community. The district court's orders have severely impeded the news agencies' ability to discover newsworthy information from potential speakers.[6]

Thus, the news agencies have alleged an injury in fact that is fairly traceable to the district court's orders and likely to be redressed by the relief requested. The district court's orders impede the news agencies' abilities to gather the news and to receive protected speech, abilities which are arguably protected by the First Amendment. The relief requested—that we vacate the March 1st and March 8th orders—would redress this injury by allowing the news agencies to discover information about the Board's process in formulating a desegregation plan. We conclude that the news agencies have standing to challenge the district court's March 1st and March 8th confidentiality orders.

## C. THE VALIDITY OF THE DISTRICT COURT'S ORDERS

Having determined that the news agencies have standing to challenge the district court's

5. The following exchange occurred at the February 22nd hearing:

MR. WEISS [attorney for intervenors]: Well, the evidence that we were going to put on, your honor, would have been evidence of the willingness of various representatives of the school board to speak to my clients prior to the entry of the order ...

. . . .

Well, we would plan to call Mr. [Bill] Pack, your honor, one of the intervenors, to testify about the effect of the court's order on his ability to gather and report news about this matter ...

THE COURT: We'll stipulate that if this order is complied with, Mr. Pack will get essentially zero information, and will not be able to report anything. Do you stipulate to that, Mr. Patin?

MR. PATIN [attorney for Board]: Yes, your honor, we will.

Additionally, the parties stipulated to the following:

MR. WEISS: Let me tell you exactly what Mr. Pack would testify, your honor.

Your honor, first, he would testify that he was given extensive information about the plan prior to the entry of the order, including drafts

of the plan, information relating to busing, information relating to student test scores. He would testify that he and Ms. Lightfoot attended workshop sessions called by the superintendent to present and discuss the draft plans, which they disseminated, and the underlying data.

Can we stipulate to that?

MR. PATIN: Your honor, I think my client was a sieve before. We'll stipulate to that.

6. The Board argues that no willing speaker exists, reasoning that because the Board requested the confidentiality orders and does not oppose them, there is no longer a willing speaker. We reject this argument. The Board stipulated before the district court that prior to entry of the confidentiality order, its employees or members or both willingly spoke to the news agencies. The district court's orders bind not only the members of the Board, the Superintendent, and the Board's counsel, but also several Board staff members or employees. The fact that the Board itself has not opposed the confidentiality order does not mean that the employees of the Board who were willing to speak before the order was entered are no longer willing to do so. The same may apply to some members of the Board.

orders, we must now address whether the district court's March 1st and March 8th orders violate the First Amendment.

### 1. The March 1st Order: The First Amendment

▪ The Supreme Court has routinely held that prior restraints on protected speech are presumed to be constitutionally invalid. *See CBS, Inc.*, 522 F.2d at 238; *see, e.g., Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 556, 96 S.Ct. 2791, 2801, 49 L.Ed.2d 683 (1976); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). "An order that prohibits the utterance or publication of particular information or commentary imposes a 'prior restraint' on speech." *United States v. Salameh*, 992 F.2d 445, 446 (2d Cir.1993). A prior restraint is constitutional only if the government demonstrates that the protected speech restrained poses a "clear and present danger, or a serious or imminent threat to a protected competing interest." *CBS, Inc.*, 522 F.2d at 238. Furthermore, "[t]he restraint must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms." *Id.*

The district court's March 1st order prohibits the Board, its attorneys, and certain of its employees from making "any written or oral comments to any other person or entity in connection with any aspect of any drafts of desegregation plans concerning the East Baton Rouge Parish School System." This order clearly constitutes a prior restraint on the speech of the Board members, attorneys, and employees to which it applies. Whether we should analyze the confidentiality order as a prior restraint in determining the First Amendment rights of the news agencies—the potential recipients of the restrained speech—is unclear. *See CBS, Inc.*, 522 F.2d at 239 (concluding that a confidentiality order restraining the speech of parties to litigation but challenged only by the media was a prior restraint); *but see Dow Jones & Co.*, 842 F.2d at 608 (deciding that a restraining order applying to the litigants and challenged by the media was not a prior restraint).

We need not decide whether the confidentiality order constitutes a prior restraint on the news agencies because, even assuming that the order is not a prior restraint, its effect on the news agencies' First Amendment rights must still be justified. *See Dow Jones & Co.*, 842 F.2d at 609 ("To conclude that this is not a case of prior restraint of the press is not to say that the restraining order need not be justified. On the contrary, it must be.").

▪ The Supreme Court has recognized "a First Amendment right to 'receive information and ideas'", and a right to receive speech protected by the First Amendment. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 757, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346 (1976). Additionally, we have noted that "the Supreme Court recognized in *Branzburg v. Hayes*, 408 U.S. 665, 681 [92 S.Ct. 2646, 2656–57, 33 L.Ed.2d 626] (1972), that newsgathering is entitled to [F]irst [A]mendment protection, for 'without some protection for seeking out the news, freedom of the press could be eviscerated.'" *In re Express–News Corp.*, 695 F.2d 807, 808 (5th Cir.1982). However, neither the First Amendment right to receive speech nor the First Amendment right to gather news is absolute. *See id.* at 809. For example, the news media have no right to discover information that is not available to the public generally. *Id.*

Confidentiality orders, and denials of access to court proceedings as well, have been allowed when a strong governmental interest or a competing individual right outweighs the First Amendment rights asserted. *See Gurney*, 558 F.2d at 1209. For example, confidentiality orders have been held constitutional in criminal jury trials when necessary to protect a defendant's Sixth Amendment right to a fair trial by an impartial jury. *See, e.g., Dow Jones & Co.*, 842 F.2d at 609 ("When the exercise of free press rights actually tramples upon Sixth Amendment rights, the former must nonetheless yield to the latter.").

In the context of a district court order preventing the press from conducting post-trial juror interviews, we have held that "an inhibition of press news-gathering rights must be necessitated 'by a compelling gov-

ernmental interest, and ... narrowly tailored to serve that interest.'" *In re Express–News*, 695 F.2d at 808–09 (quoting *Globe Newspaper v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982)). In *Dow Jones & Co.*, the Second Circuit stated that to justify a confidentiality order restraining participants in a criminal jury trial from speaking with the press, a "reasonable likelihood" that pretrial publicity would prejudice the criminal defendant's Sixth Amendment right to a fair trial by an impartial jury must be demonstrated. 842 F.2d at 610. Furthermore, the Second Circuit stated that the district court must consider whether alternative remedies less intrusive of First Amendment rights would serve to protected the criminal defendant's competing Sixth Amendment rights. *See id.* at 611. We need not decide whether to employ the strict scrutiny standard of *In re Express–News*, or some variant of the reasonable likelihood standard of *Dow Jones & Co.*, because the district court's March 1st order would not satisfy either standard.

■ The March 1st order is not justified, on this record, by any important governmental interest or countervailing individual right.[7] First, we emphasize that this is not a criminal trial, nor even a civil jury trial. There is no possibility that publicity will prejudice potential jurors. The Board argues that the confidentiality order is necessary because the Fourteenth Amendment rights of the East Baton Rouge Parish school children to attend schools free of racial inequality outweighs any First Amendment rights of the news agencies. Indeed, the students' constitutional right to desegregated schools is compelling; however, the confidentiality order does not necessarily further their interests. The removal of the confidentiality order would in no way prevent the

7. The parties have not argued that the confidentiality order protects the Board's attorney-client and work product privileges.

8. In the absence of the confidentiality order, publicity and public discourse about the drafting of a proposed desegregation plan may lengthen the process of formulating a plan. However, this possibility, inherent in the exercise of First Amendment rights, cannot justify the order.

Board from desegregating the school system.[8]

The purpose of the confidentiality order, as explained by the district court in relation to the February 6th order, is to allow the Board members privately—without interference from the public or the media—to discuss and formulate a proposed desegregation plan. Whatever the validity of this rationale for conducting private meetings may be, it does not, on this record, justify the sweep of the March 1st order prohibiting Board members and employees from making any written or oral comments to any other person or entity in connection with any aspect of any drafts of any desegregation plan.

The Board argues that the damage to the news agencies' First Amendment rights is mitigated because the Board plans to disseminate the final draft of the proposed desegregation plan to the public and the press. The short answer to this argument is that the parties have stipulated that the process itself is newsworthy.

We hold that the district court's March 1st order is unconstitutional because, on this record, it intrudes severely upon the news agencies' First Amendment right to gather the news and receive speech and it is not justified by protection of any countervailing governmental interest or individual right. Accordingly, we vacate the March 1st order.

### 2. The March 8th Order

■ The March 8th order, in addition to requiring the Board to meet in private sessions, requires that "all of the above private sessions and all preliminary version(s) of the draft [of the desegregation plan] remain confidential and private." [9] This confidentiality requirement suffers from the same constitutional infirmity as the March 1st order: the confidentiality requirement violates the news

9. This portion of the March 8th order reads as follows:

IT IS FURTHER ORDERED that all of the above private sessions and all preliminary version(s) of the draft shall remain confidential and private until further order of the Court.

agencies' First Amendment rights to gather news about the formulation of a desegregation plan. As no compelling governmental interest supports this confidentiality requirement, it must also be vacated.

The news agencies also contest the validity of the main portion of the March 8th order directing the Board to meet in private sessions to formulate a desegregation plan and negotiate the plan with the adverse parties to the litigation.[10] The news agencies challenge the private sessions requirement under the First Amendment and also contend that this requirement of the March 8th order allows the Board to circumvent the requirements of the Louisiana Open Meetings Law, La.Rev. Stat.Ann. ("L.R.S.") § 42:4.1–11 (West 1990).[11] Because we are able to dispose of the news agencies' challenge to the private sessions requirement of the March 8th order

on nonconstitutional grounds, we do not reach their First Amendment argument.

Turning to the Louisiana Open Meetings Law, the Board defends the order by arguing that an exception to that law would allow it to conduct the private sessions contemplated by the March 8th order.[12] The news agencies respond that, even if the private sessions would comply with the Louisiana Open Meetings Law, the court's order *requiring* such private sessions allows the Board to avoid taking the many procedural steps required by the Open Meetings Law before it meets in a closed session.[13]

 We express no opinion on whether the private sessions contemplated by the March 8th order would comply with the Louisiana Open Meetings Law. We note that, at least on the surface of it, the district court

---

10. This requirement reads as follows:

> IT IS ORDERED that the School Board shall meet in private confidential sessions, under the sole auspices, and pursuant to the authority, of this Court with its Superintendent, staff, consultants and attorneys for the purpose of reviewing and discussing the work of the Superintendent, staff, consultants and attorneys on the preliminary version(s) of the draft, and for the purpose of providing whatever guidance or direction the members of the School Board may deem appropriate, and in such form or by such procedures as it may deem necessary, to the Superintendent, staff, consultants and attorneys concerning the preparation of the draft.
>
> IT IS FURTHER ORDERED that the School Board and its Superintendent, staff, consultants and attorneys may meet in private confidential sessions, under the sole auspices, and pursuant to the authority, of this Court with the attorneys and/or parties for the other litigants in this case (and possibly with the consultants and/or experts for and/or representatives of the other litigants in this case) to discuss this litigation and various aspects of the preliminary version(s) of the draft.

11. Section 42:4.1 of the Louisiana Revised Statutes recognizes that "it is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." L.R.S. § 42:4.1. Accordingly, section 42:5 requires that "every meeting of any public body shall be open to the public unless closed pursuant to [another section]." L.R.S. § 42:5. A school board is a "public body" within the meaning of the Louisiana Open Meetings Law. L.R.S. § 42:2(2).

12. Section 42:6.1 provides exceptions to the open meeting requirement:

> A. A public body may hold an executive session pursuant to R.S. 42:6 for one or more of the following reasons:
>
> . . . .
>
> (2) Strategy sessions or negotiations with respect to collective bargaining, prospective litigation after formal written demand, or litigation when an open meeting would have a detrimental effect on the bargaining or litigating position of the public body. . . .

L.R.S. § 42:6.1(A)(2).

13. For example, the Board need not determine whether "an open meeting would have a detrimental effect on the bargaining or litigating position of the public body." L.R.S. § 42:6.1(A)(2). Additionally, the Louisiana Open Meetings Act requires the following for a public body to meet in closed sessions:

> A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of the constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during an executive session. The vote of each member on the question of holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section or R.S. 42:6.1 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of R.S. 42:4.1 through R.S. 42:8.

L.R.S. § 42:6.

entered the March 8th order without even considering the Louisiana Open Meetings Law. In entering a confidentiality order protecting a public entity, or an order such as this requiring a public entity to meet in secrecy, the district court should consider the effect of the order on state freedom of information laws. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 791 (3d Cir.1994) ("where a governmental entity is a party to litigation, no protective, sealing or other confidentiality order shall be entered without consideration of its effect on disclosure of government records to the public under state and federal freedom of information laws" (citations and alterations omitted)).

The district court made no findings concerning whether the meetings contemplated by the March 8th order fit within any of the exceptions to the Louisiana Open Meetings Law. L.R.S. § 42:6.1(A)(2); *see Pansy,* 23 F.3d at 786. The court made no effort to explain why the need for confidential Board meetings outweighed the news agencies' interest in attending Board meetings protected by the Louisiana Open Meetings Law. *See id.* Furthermore, the Board, although aware of its duty as a public entity to comply with the Louisiana Open Meetings Law, did not request that the district court determine whether the exceptions to the open meeting requirement covered the private sessions contemplated by the March 8th order.

The district court gave no notice to the news agencies of its intent to enter the March 8th order, although it must have known that the news agencies would oppose the order, as they had already intervened to contest the court's earlier confidentiality orders. The March 8th order requiring private sessions in effect immunizes the Board from enforcement of the Louisiana Open Meetings Law, as it removes the decision of whether to hold closed meetings from the Board. However, despite this effect, the district court also gave no notice of the March 8th order to the district attorney, who is required by law to enforce the provisions of the Open Meetings Law. L.R.S. § 42:10. We need not, and do not, hold that notice to the press or the district attorney is always required before entry of an order implicating state sunshine laws. At a minimum, such notice, under the circumstances that obtained here, would have been prudential. In any event, the absence of such notice in this case had the effect of eliminating any opposition to the secret meetings aspect of the March 8th order. Because there was no opposition to the entry of the order, the district court took the wholly unacceptable step of entering the order without making any findings.

In short, the district court entered a sweeping order requiring a public entity to conduct confidential meetings which may or may not comply with state law. The court should not have entered this order without considering whether the meetings that it ordered complied with the Louisiana Open Meetings Law, or demonstrating compelling reasons for preempting Louisiana law. We conclude that the district court abused its discretion in entering the March 8th order without considering its effect on Louisiana law. *See Pansy,* 23 F.3d at 783 ("We review the grant or modification of a confidentiality order for abuse of discretion."). Accordingly, we vacate the March 8th order.

## III. CONCLUSION

For the foregoing reasons, we VACATE the district court's March 1st and March 8th orders. In light of our disposition of this appeal, the news agencies' alternative petition for a writ of mandamus is DENIED. Costs shall be borne by the Board. The mandate shall issue forthwith.