620 N.W.2d 10 (2000)
In re Matter of the DETROIT FREE PRESS, Appellant.
Jennifer Ireland, Plaintiff,
v.
Steve Smith, Defendant.
Docket No. 116012, COA No. 215022.
Supreme Court of Michigan.
December 21, 2000.
On order of the Court, the application for leave to appeal from the November 23, 1999 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
*11 CORRIGAN, J., concurs and states as follows:
I join in the order denying the application for leave to appeal. The underlying action in this case was a well-publicized custody dispute that eventually settled. In 1996, while the underlying action was still pending, the trial court entered a gag order for the express purposes of advancing the best interests of the minor child and ensuring a fair hearing. The order forbade the parties, counsel, and certain other persons from discussing the subject matter of the case with the media or allowing media access to the minor child. When the underlying action was settled in 1997, the parties and the minor child's guardian ad litem agreed in the consent order that the trial court's gag order would remain in effect. In 1998, the Detroit Free Press moved to lift the gag order, purportedly to allow one of its reporters to question the parties about a different ongoing custody dispute. Only the guardian ad litem opposed the motion. After a hearing, the trial court denied the motion on the ground that its existence remained in the best interests of the minor child.
The Court of Appeals affirmed in an unpublished per curiam opinion. The majority concluded that the gag order did not constitute a prior restraint because it did not permit the trial court to impose sanctions against the Free Press for publishing information about the case. It further concluded that "the limited incidental effects of the order on First Amendment rights" were justified by the fact that the gag order was "reasonable" and served the "legitimate purpose" of protecting the minor child's best interests. See Radio & Television News Ass'n of Southern California v. United States District Court for the Central District of California, 781 F.2d 1443, 1448 (C.A.9, 1986).
The dissenting judge agreed that the gag order did not constitute a prior restraint on the Free Press, but did not believe that the gag order should have been affirmed without further inquiry. In consideration of the importance of the media's constitutional right of access to information, see Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the dissenting judge would have remanded the case to the trial court for a more comprehensive analysis of the competing interests. In particular, the dissenting judge would have required the trial court to (1) consider and articulate the effect of the gag order on the access of the press, (2) more precisely explain the interest protected by the gag order, (3) examine alternative means of protecting the minor child's interests and adopt the least restrictive alternative, and (4) articulate precisely why it was necessary to continue the gag order after the settlement of the underlying action.
In its application for leave to appeal to this Court, the Free Press argues that the gag order constitutes an impermissible prior restraint on speech. It also argues that the gag order impermissibly infringes its constitutionally protected "right to gather news." I concur in the order denying leave because I find neither of these arguments to be persuasive or complete.
Clearly, the trial court's gag order placed no direct restraint of any kind on the media. The only restrictions were those placed on the trial participants and other persons subject to the gag order. Accordingly, I agree with the view of both the majority and dissenting judges below that the Free Press cannot challenge the gag order as an impermissible prior restraint. I also note that the Free Press has failed to argue that it had standing, as an interested listener, to assert the rights of a willing speaker subject to the gag order. Cf. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 756-757, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Because the Free Press has made little effort to address the important distinction between restraints placed directly on the media and those placed on third parties, this case does not present an ideal opportunity to consider *12 the First Amendment implications of gag orders on trial participants.
Further, while the Free Press makes much of its special first amendment right to "gather news," citing dictum in Branzburg, supra at 681-682, 92 S.Ct. 2646, it fails to acknowledge the rather limited scope of this "right." It is axiomatic that the press has no greater right to access information than the public at large. See Branzburg, supra at 684-685, 92 S.Ct. 2646, citing Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) ("Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal"); Nixon v. Warner Communications, 435 U.S. 589, 609, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), quoting Estes v. Texas, 381 U.S. 532, 589, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring) ("The First Amendment generally grants the press no right to information about a trial superior to that of the general public. `Once beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public.'"); see also Pell v. Procunier, 417 U.S. 817, 835, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (holding that press had no greater right than general public to interview prisoners, and that rule preventing press access to prisoners was not an unconstitutional limitation on such right). The rule of these cases severely undermines the contention that there exists a special "freedom of the press" right to access the information subject to the trial court's gag order. The right of the Free Press in this cases is no greater than that of any member of the public at large.
I also note that there is no general First Amendment "right to gather data." In Zemel v. Rusk, 381 U.S. 1, 17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965), the United States Supreme Court addressed a First Amendment claim raised by a person denied a passport to Cuba. The petitioner alleged that he had a First Amendment right to travel to Cuba to learn firsthand about its policies. Brushing aside the petitioner's argument, the Court concluded that "[t]he right to speak and publish does not carry with it the unrestrained right to gather information." In so doing, it explained that "[t]here are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow." Id. at 16-17, 85 S.Ct. 1271. A mere restriction on "data flow" does not raise serious First Amendment concerns. Because the Free Press does not ground its argument on the presence of a specific willing speaker actually stifled by the gag order at issue, its claim amounts to nothing more than a general challenge to the "restriction on `data flow'" caused by the existence of the gag order (as an impediment to potential sources of information). This is not a particularly significant First Amendment interest.
In sum, while this case brings to mind some interesting issues involving important constitutional interests, the Free Press' argument fails to address several pertinent questions. Accordingly, prudence demands that we leave resolution of the lingering constitutional questions to another day.
YOUNG, JR., J., concurs and states as follows:
I agree with the order denying the application for leave to appeal. However, I think that issues regarding the propriety and scope of gag orders merit further consideration by this Court. Therefore, I support having the Court open an administrative file to address these issues.
*13 TAYLOR, J., dissents and states as follows:
I would remand this matter to the trial court. I think that Judge Markman's dissent below makes a colorable argument that, although the gag order at issue did not constitute a prior restraint on appellant, it nonetheless implicated First Amendment rights. Moreover, apart from this constitutional concern, the gag order appears overly broad in terms of the people restricted from communicating with the press, the scope of the restrictions, and its continuation beyond the stage of litigation during which it was entered. Accordingly, I would remand this matter to the trial court to precisely articulate (1) the interests protected by the order; (2) the effect of the gag order, if any, on the First Amendment rights of appellant; and then to weigh these interests and reconsider the appropriateness of continuing the gag order in its current form.
MARILYN J. KELLY J., would grant leave to appeal.
MARKMAN, J., not participating.